**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN SNEED, NICKOLAS CANNON, and MOUSSA KOUYATE, individually and on behalf of all others similarly situated, | Case No. 4:23-cv-05443-JST<br>Complaint Filed: October 23, 2023<br>FAC Filed: January 26, 2024 |
| Plaintiffs, | *Assigned to Hon. Jon S. Tigar* |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | Hearing Information<br>Date: April 4, 2024<br>Time: 2:00 p.m.<br>Location: Videoconference |

Case No. 4:23-cv-05443-JST

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

## TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT ............................................................................................................. 4

    A.   Plaintiffs Have Article III Standing Because They Suffered Economic Injuries .............. 4

    B.   Plaintiffs Plausibly Plead Deception ..................................................................... 8

    C.   Plaintiffs' Claims Are Not Preempted .................................................................... 14

    D.   The Lack of Adequate Legal Remedies Supports Equitable Jurisdiction ........................ 16

    E.   Defendant Prematurely Moves to Dismiss Plaintiffs' Nationwide Claims ...................... 20

    F.   Plaintiffs Sufficiently State a Claim for Breach of Express and Implied Warranty ........ 22

    G.   Plaintiffs' Unjust Enrichment Claim is Proper ....................................................... 23

    H.   This Court Has Personal Jurisdiction for Plaintiff Kouyate's Claims ........................... 24

    I.   This Court Should Not Strike Plaintiffs' Online Advertising Allegations ...................... 24

III. CONCLUSION .......................................................................................................... 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page No.**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004).................................................................................................24

*Andino v. Apple, Inc.*,
   2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ......................................................................19

*Atkinson v. Elk Corp. of Texas*,
   142 Cal. App. 4th 212 (2006)..............................................................................................23

*Banh v. Am. Honda Motor Co., Inc.*,
   2019 WL 8683361 (C.D. Cal. Dec. 17, 2019)....................................................................22

*Bell v. Publix Super Markets, Inc*,
   982 F.3d 468 (7th Cir. 2020)...........................................................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................13

*Birdsong v. Apple Inc.*,
   590 F.3d 955 (9th Cir. 2009)................................................................................................. 6

*Brod v. Sioux Honey Ass'n, Co-op*,
   927 F. Supp. 2d 811 (N.D. Cal. 2013) ..................................................................................9

*Budani v. Monster Energy Co.*,
   527 F. Supp. 3d 667 (S.D.N.Y. 2021) .................................................................................12

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) .....................................................................................6, 7

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*,
   169 Cal. App. 4th 116 (2008)..............................................................................................23

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009) .......................................................................................14

*Chester v. TJX Companies, Inc.*,
   2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) ....................................................................20

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008)..............................................................................................23

*Coleman v. Mondelez Int'l., Inc.*,
   554 F. Supp. 3d 1055 (C.D. Cal. 2021). .............................................................................19

*Critcher v. L'Oreal USA, Inc.*,
   959 F.3d 31 (2d Cir. 2020) ..................................................................................................16

*Danone, US, LLC v. Chobani, LLC*,
   362 F. Supp. 3d 109 (S.D.N.Y. 2019).................................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................... 5, 7, 19, 20

*Donaldson v. Read Magazine*,
   333 U.S. 178 (1948) ......................................................................................................... 9

*Duran v. Hampton Creek*,
   2016 WL 1191685 (N.D. Cal. Mar. 28, 2016) ............................................................. 25

*Eckler v. Neutrogena Corp.*,
   238 Cal. App. 4th 433 (2015) ...................................................................................... 15

*Engram v. GSK Consumer Healthcare Holdings (US), Inc.*,
   2021 WL 4502439 (E.D.N.Y. 2021) ............................................................................ 10

*Faustino v. Alcon Lab'ys, Inc.*,
   2015 WL 12839161 (C.D. Cal. Sept. 22, 2015)
   *aff'd sub nom*, 692 F. App'x 819 (9th Cir. 2017) ........................................................ 15

*Ferry v. Porsche Cars N. Am., Inc.*,
   2022 WL 1769120 (C.D. Cal. Mar. 11, 2022) ............................................................. 18

*Freeman v. Oakland Unified Sch. Dist.*,
   179 F.3d 846 (9th Cir. 1999) ....................................................................................... 21

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ........................................................................................... 9

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...................................................................... 22

*Franklin v. Midwest Recovery Sys., LLC*,
   2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) ............................................................... 25

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................................................ 9

*Frigard v. United States*,
   862 F.2d 201 (9th Cir. 1988) ....................................................................................... 21

*Gerstle v. Am. Honda Motor Co., Inc.*,
   2017 WL 2797810 (N.D. Cal. June 28, 2017) ............................................................. 22

*Global Commodities Trading Group, Inc. v. Beneficio de Arro Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ...................................................................................... 21

*Gitson v. Trader Joe's Co.*,
   2015 WL 9121232 (N.D. Cal. 2015) ............................................................................ 16

*Haas v. Travelex Ins. Servs. Inc.*,
   555 F. Supp. 3d 970 (C.D. Cal. 2021) ......................................................................... 17

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020) ......................................................................... 12

*Heredia v. Sunrise Senior Living LLC*,

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ................................................................................ 19

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ........................................................................................ 4, 5, 7

*Holmberg v. Armbrecht*,
  327 U.S. 392 (1946) ................................................................................................................ 21

*In re Apple Processor Litig.*,
  2023 WL 595062 (9th Cir. Sept. 13, 2023) .......................................................................... 17

*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) .................................................................................. 18

*In re Natera Prenatal Testing Litig.*,
  2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) ..................................................................... 17

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
  2021 WL 3191733 (N.D. Cal. July 28, 2021) ...................................................................... 13

*In Re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015) ................................................................................................. 18

*Jeong v. Nexo Fin. LLC*,
  2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ........................................................................ 17

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
  2021 WL 1541649 (S.D. Cal. Apr. 20, 2021) ...................................................................... 19

*Johns v. Bayer Corp.*,
  2012 WL 1520030 (S.D. Cal. Apr. 30, 2012) ...................................................................... 18

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) .................................................................................. 23

*Johnson v. Trumpet Behav. Health, LLC*,
  2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ............................................................................ 17

*Kanfer v. Pharmacare US, Inc.*,
  142 F. Supp. 3d 1091 (S.D. Cal. 2015) ........................................................................... 16, 23

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002) ................................................................................................... 15

*Kellman v. Whole Foods Mkt., Inc.*,
  313 F. Supp. 3d 1031 (N.D. Cal. 2018) ................................................................................ 14

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ................................................................................... 11

*Krueger v. Wyeth, Inc.*,
  396 F. Supp. 3d 931 (S.D. Cal. 2019) ................................................................................... 18

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................................... 7

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

*La Barbera v. Olé Mexican Foods, Inc.*,
  2023 WL 4162348 (C.D. Cal. 2023) .............................................................................................7

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ........................................................................................................9

*Locklin v. StriVectin Operating Co., Inc.*,
  2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ............................................................................14

*Mack v. LLR, Inc.*,
  2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) ...........................................................................23

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) .....................................................................................................9, 10

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................................................4, 5, 7

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ......................................................................................................22

*McCoy v. Nestle USA, Inc*,
  173 F. Supp. 3d 954 (N.D. Cal. 2016)
  *aff'd sub nom*, 730 F. App'x 462 (9th Cir. 2018) .......................................................................5

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ....................................................................................................10

*McKay v. Sazerac Co., Inc.*,
  2023 WL 3549515 (N.D. Cal. May 17, 2023) ...........................................................................11

*Meanurit v. ConAgra Foods, Inc.*,
  2010 WL 2867393 (N.D. Cal. July 20, 2010) ...........................................................................10

*Meaunrit v. The Pinnacle Foods Grp., LLC*,
  2010 WL 1838715 (N.D. Cal. May 5, 2010) .............................................................................10

*Milstead v. Gen. Motors LLC*,
  2023 WL 4410502 (N.D. Cal. July 6, 2023) .............................................................................17

*Moore v. EO Prods., LLC*,
  2023 WL 6391480 (N.D. Cal. Sept. 29, 2023) .........................................................................12

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ....................................................................................................18

*Moore v. Trader Joes Co.*,
  4 F.4th 874 (9th Cir. 2021) .........................................................................................................10

*Morgan v. Albertsons Cos.*,
  2023 WL 3607275 (N.D. Cal. 2023) .....................................................................................15, 16

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ....................................................................................................25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Morris v. Mott's LLP*,
2019 WL 948750 (C.D. Cal. 2019) ............................................................................................. 23

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ................................................................................................. 7

*Nishimoto v. Cty. of San Diego*,
2017 WL 2709742 (S.D. Cal. June 20, 2017) ........................................................................... 13

*OC Ramps, Inc. v. Keen Ramps, Inc.*,
2018 WL 7504408 (C.D. Cal. Dec. 13, 2018) .......................................................................... 14

*Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*,
711 F. Supp. 1016 (E.D. Cal. 1989) ......................................................................................... 14

*Pereda v. Gen. Motors LLC,*
2022 WL 19975388 (N.D. Cal. 2022) ....................................................................................... 24

*Prescott v. Rite Aid Corp.*,
667 F. Supp. 3d 1011 (N.D. Cal. 2023) .................................................................................... 10

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013) ...................................................................................... 14

*Robles v. GOJO Industries, Inc.*,
2023 WL 4946601 (9th Cir. 2023) ............................................................................................ 10

*Roffman v. Perfect Bar, LLC*,
2022 WL 4021714 (N.D. Cal. 2022) ......................................................................................... 16

*Roper v. Big Heart Pet Brands, Inc.*,
510 F. Supp. 3d 903 (E.D. Cal. 2020) ..................................................................................... 23

*Ruiz v. Celsius Holdings, Inc.*,
2021 WL 5811264 (S.D. Cal. July 28, 2021) ............................................................................. 5

*Russell v. Kohl's Dept. Stores, Inc.*,
2015 WL 12781206 (C.D. Cal. Oct. 6, 2015) ........................................................................... 18

*San Diego Cnty. Gun Rights Committee v. Reno*,
98 F.3d 1121 (9th Cir. 1996) ...................................................................................................... 4

*Sandoval v. PharmaCare US, Inc.*,
145 F. Supp. 3d 986 (S.D. Cal. 2015) ...................................................................................... 16

*Schippell v. Johnson & Johnson Consumer, Inc.*,
2023 WL 6178485 (C.D. Cal. 2023) ........................................................................................... 7

*Scott v. Saraya USA, Inc.*,
2023 WL 3819366 (N.D. Cal. June 5, 2023) ............................................................................ 23

*Shalikar v. Asahi Beer U.S.A.*,
2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) ........................................................................... 12

*Sinatro v. Barilla Am., Inc.*,

635 F. Supp. 3d 858 (N.D. Cal. 2022) ............................................................................... 5

*Sitt v. Nature's Bounty, Inc.*,
2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ................................................................ 14

*Slaten v. Christian Dior Perfumes, LLC*,
2023 WL 6959127 (N.D. Cal. 2023) .............................................................................. 10

*Smith v. Jackson*,
84 F.3d 1213 (9th Cir. 1996) .......................................................................................... 25

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......................................................................................... 17

*Souter v. Edgewell Personal Care Co.*,
2022 WL 485000 (N.D. Cal. Feb. 16, 2022) .................................................................. 19

*Stanwood v. Mary Kay, Inc.*,
941 F. Supp. 2d 1212 (C.D. Cal. 2012) ............................................................................ 6

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ............................................................... 12

*Traction v. Viva Labs, Inc.*,
2017 WL 4125053 (S.D. Cal. Sept. 18, 2017) ............................................................... 23

*Van Mourik v. Big Heart Pet Brands, Inc.*,
2018 WL 1116715 (N.D. Cal. Mar. 1, 2018) ................................................................. 23

*Vasic v. Patent Health, LLC*,
2014 WL 940323 (S.D. Cal. Mar. 10, 2014) .................................................................. 14

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
309 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................................ 12

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................................. 9, 10, 11

*Woodard v. Labrada*,
2017 WL 3309765 (C.D. Cal. Jul. 31, 2017) ................................................................. 23

*Wyeth v. Levine*,
129 S. Ct. 1187 (2009) .................................................................................................... 16

*Zeiger v. WellPet LLC*,
2021 WL 756109 (N.D. Cal. Feb. 26, 2021) .................................................................. 19

**Statutes**

Fed. R. Civ. P. 8(e)(2) .......................................................................................................... 24

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 11, 25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Fed. R. Civ. P. 41(b) ........................................................................................................................21

21 U.S.C. § 343 ...............................................................................................................................16

21 U.S.C. § 379 ...............................................................................................................................14

Cal. Com. Code § 2314(2)(f)...........................................................................................................23

**Regulations**

40 Fed. Reg. at 57303 ......................................................................................................................15

43 Fed. Reg. at 25578 ......................................................................................................................15

43 Fed. Reg. at 25579 ......................................................................................................................15

54 Fed. Reg. 6814............................................................................................................................15

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

To increase profits and obtain an unfair advantage over its lawfully acting competitors, Defendant The Procter & Gamble Company's ("Defendant") falsely advertises, labels, and packages its over-the-counter ("OTC") ZzzQuil sleep aids (the "Products") as "Non-Habit Forming" (the "Challenged Representation"). *See* First Amended Complaint, ECF 23 ("FAC"), ¶¶ 2, 28.



The Challenged Representation misleads reasonable consumers, including Plaintiffs Stephen Sneed, Nickolas Cannon, and Moussa Kouyate ("Plaintiffs"), into believing that taking the Products cannot cause or lead to habitual use (*i.e.*, frequent or prolonged use). *Id.* ¶¶ 2-3, 8c, 8f, 9c, 9f, 10c, 10f, 28. Contrary to the Challenged Representation, each Product is not only a sleep aid that inherently leads to habitual use, but each Product also contains the active ingredient Diphenhydramine HCI ("Diphenhydramine"). *Id.* ¶¶ 3, 23, 25. Diphenhydramine can cause consumers to frequently use the Product over a prolonged period. *Id.* ¶¶ 3, 25. In this way, Defendant has defrauded consumers, like Plaintiffs, into buying the Products, or alternatively overpaying a price premium for "Non-Habit Forming" sleep aids that, indeed, cause consumers to form a habit. *Id.* ¶¶ 3, 8f, 9f, 10f, 34. Accordingly, Plaintiffs have filed this false advertising, putative class action against Defendant, on behalf of a class of nationwide consumers (the "Nationwide Class"), including the California and New York Subclasses (collectively, the "Class"), to assert claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") on behalf of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the California Subclass; violations of New York's Consumer Fraud Act, N.Y. GBL §§ 349, 350, *et seq.* ("CFA") on behalf of the New York Subclass; and breach of warranty and unjust enrichment on behalf of the Nationwide Class. *See generally id.* In response, Defendant moves to dismiss Plaintiffs' claims on several unmeritorious grounds under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). *See* Motion to Dismiss, ECF 24 ("MTD").

*First*, Defendant argues that Plaintiffs lack Article III standing as they do not allege that they habitually use the Products and their allegations concerning economic harm are "conclusory." However, Plaintiffs need not allege a bodily injury where they allege an economic injury—specifically, that they would not have bought or paid as much for the Products if they had known that they can lead to habitual use. FAC ¶¶ 8f, 9f, 10f. Such allegations satisfy their pleading burden under Ninth Circuit law.

*Second*, Defendants argue that all of Plaintiffs' claims fail because the front-label "Non-Habit Forming" claim cannot deceive reasonable consumers as they should find, read, and interpret inconspicuous back-label statements, "for the relief of occasional sleeplessness," "take only one dose . . . per day," and "[s]top use and ask a doctor if sleeplessness persists continuously for more than 2 weeks," to mean that the Products *can* lead to habitual use. Even if consumers were obligated to read back labels to investigate the unambiguous front-label "Non-Habit Forming" claim—which they are not—a plain reading of the statements neither clarifies nor contradicts the literally false Challenged Representation. Additionally, Defendant wages a quintessential dispute over the merits to argue that Plaintiffs have not *proved* through scientific studies that taking the Products for sleep will lead consumers to habitually use them and, therefore, all of Plaintiffs' claims fail. However, Plaintiffs have no obligation to plead evidence under Fed. R. Civ. P. 12(b)(6).

*Third*, Defendant argues that the FDA's determination that Diphenhydramine is generally recognized as safe and effective ("GRASE") preempts state laws that prohibit the Products' marketing as "Non-Habit Forming." However, the FDA did not determine that the Products cannot lead to habitual use and the statutes and regulations upon which Defendant relies neither authorize manufacturers to market sleep aids as "Non-Habit Forming," nor permit the use of false and misleading advertising claims on OTC medications.

*Fourth*, Defendant argues that this Court lacks equitable jurisdiction over Plaintiffs' UCL, FAL,

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

and California unjust enrichment claims because their CLRA and warranty claims afford adequate legal remedies. However, dismissal on the pleadings is premature. Further, restitution in the form of a full refund—according to Defendant—may not be available under the CLRA or for breach of warranty and, even if it is, an award of monetary damages for past purchases does not remedy the future harm an injunction provides.

*Fifth*, Defendant prematurely moves to dismiss Plaintiffs' nationwide claims for breach of warranty and injunctive relief without demonstrating that a material conflict of law exists between the laws of the States of California or New York and the laws of putative class members who do not live in those States. Courts routinely deny motions to dismiss in favor of resolving any purported conflicts at the class certification stage under Fed. R. Civ. P. 23 and after the completion of discovery.

*Sixth*, Defendant *incorrectly* argues, based solely on California law, that Plaintiffs' California and New York breach of express and implied warranty claims fail, even though Plaintiff Kouyate's claims are not governed by California law. Nonetheless, Defendant argues that the law only permits recovery of the difference in the value warranted and received, as opposed to a full refund. However, Plaintiffs allege a price premium theory of recovery, as an alternative to a full refund theory, to support their claim for legal damages. Defendant also argues that Plaintiffs' implied warranty claims fail because Plaintiffs must allege that the Products are not fit for their ordinary purpose, and that vertical privity exists between Plaintiffs and Defendant. But that is not the law in California.

*Seventh*, Defendant *incorrectly* argues, based solely on California law, that Plaintiffs' California and New York unjust enrichment claims, pled in the alternative to Plaintiffs' breach of warranty claims, are barred because Plaintiffs also allege a contract between Defendant and Plaintiffs, *vís-a-vís*, their warranty claims. But the law expressly allows Plaintiffs to plead claims in the alternative and Defendant fails to address Plaintiff Kouyate's New York claims.

*Eighth*, Defendant argues that this Court lacks personal jurisdiction over Plaintiff Kouyate's claims because neither party is a California citizen, and his claims are based on Defendant's out-of-state contacts. However, this Court has the discretion to invoke pendent personal jurisdiction to avoid the unnecessary duplication of litigation.

*Ninth*, Defendant improperly seeks to strike allegations about its online advertising campaign

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

designed to convince consumers that the Products are "Non-Habit Forming." But Plaintiffs' allegations are not "redundant, immaterial, impertinent, or scandalous" under Fed. R. Civ. P. 12(f). Rather, they demonstrate the materiality of the Challenged Representations in that they are part and parcel to Defendant's marketing strategy to convince consumers that the Products are "Non-Habit Forming." Accordingly, this Court should deny Defendant's motion to dismiss in its entirety.

## II.    ARGUMENT

### A.    Plaintiffs Have Article III Standing Because They Suffered Economic Injuries

Defendant contends Plaintiffs lack Article III standing because they did not adequately plead an injury-in-fact. MTD at 8-11. Specifically, Defendant argues that Plaintiffs must allege that "they *personally* developed a habit of using ZzzQuil" (*id.* at 8), and that Plaintiffs' allegations concerning an economic "price premium" injury "are too conclusory" (*id.* at 10). That is wrong.

Plaintiffs adequately plead Article III standing when they allege: "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Economic harm is a "quintessential injury-in-fact" that occurs when consumers spend money under false pretenses, and simple allegations that plaintiffs would not have spent that money if they knew the truth satisfy their pleading burden. *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (finding actual and concrete economic injuries that constitute an injury-in-fact where the plaintiffs alleged that, "as a result of defendants' actions, they paid more for their homes than what the homes were worth at the time of sale. . . . [and] that they would not have purchased their homes had defendants made the disclosures allegedly required by law."); *see also, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-08 (9th Cir. 2013) (finding allegations sufficient to warrant Article III standing where the plaintiffs alleged they purchased "merchandize on the basis of false price information" and that they "would not have made the purchase but for the representation"); *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing.").

Consistent with Ninth Circuit law, Plaintiffs allege economic harm. They assert that Defendant's Challenged Representation deceived them into buying the Products for $7.00 to $15.00, or otherwise

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

overpaying a premium for purportedly "Non-Habit Forming" sleep aids. FAC ¶¶ 8b-c, 8f, 9b-c, 9f, 10b-c, 10f (alleging purchase details, including the prices paid for each Product; that Plaintiffs relied on the Challenged Representation in deciding to purchase the Products; and that they "would not have purchased the Product[s], or . . . paid as much for [them], had Plaintiff[s] . . . known that the Challenged Representation was false"). Thus, Plaintiffs suffered economic harm *at the time they purchased the Products.*

Plaintiffs need not allege bodily injuries *vis-a-vis* habitual use because the economic injury alleged—the payment of money based on false promises—is not only a well-established injury in fact, but the injury occurred at the point of purchase and so such post-purchase contingencies are wholly irrelevant. *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965-66 (9th Cir. 2018) (holding that the plaintiff was not required to allege damage to her plumbing or pipes from defendant's falsely advertised "flushable" wipes because the economic injury from paying a premium was sufficient to allege an injury in fact); *Hinojos*, 718 F.3d at 1103-08; *Maya*, 658 F.3d at 1069; *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 872 (N.D. Cal. 2022) (finding Article III standing where the plaintiffs alleged defendant misleadingly labeled pastas led them to buy or overpay for the products); *Ruiz v. Celsius Holdings, Inc.*, 2021 WL 5811264, at *3 (S.D. Cal. July 28, 2021) (finding Article III standing where plaintiffs alleged they would not have purchased, or would not have paid as much for, defendant's beverages absent defendant's false representation); *McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016), *aff'd sub nom*, *McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th Cir. 2018) ("McCoy alleges that the value of the chocolate products was diminished because consumers did not wish to support a supply chain that included severe labor abuses. The alleged damage was therefore done by the purchase itself, not by any contingency that might happen after the purchase.").[1]

This court should reject Defendant's attempt to rely on inapposite product *defect* cases in which the plaintiffs did not rely on any misleading representations in deciding to pay for the products, or they made uncredible claims that they would not have bought the products had they known about undisclosed, unmanifested, and speculative "defects." MTD at 8-10 (primarily relying on *Birdsong v.*

---

[1] Defendant contends that because Plaintiffs do "not personally know whether the Products or diphenhydramine can lead to frequent use over prolonged periods," they must not habitually use them. MTD at 8. Not so. That Plaintiffs are not doctors or experts and cannot say whether one drug or sleep aid causes habitual use, does not necessarily mean that they do not habitually use the Products.

*Apple Inc.*, 590 F.3d 955 (9th Cir. 2009) and *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017) and citing a host of similar product defect cases that are not premised on affirmative misrepresentations). In *Birdsong*, the plaintiffs asserted that their iPod earbud headphones were *defective* because they "ha[d] the *capability* of producing sounds as loud as 115 decibels," which "*increase[d] the danger* of hearing damage." 590 F.3d at 946, 958 (emphasis added). Although the plaintiffs claimed that "the iPod's inherent risk of hearing loss . . . reduced the value of their iPods and deprived them of the full benefit of their bargain," the court found the plaintiffs lacked standing for failure to plead an injury-in-fact. *Id.* at 961. That is because the plaintiffs did "not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time," thereby deceiving them into overpaying for the iPods, and, alternatively, they did not allege that "they suffered or imminently will suffer hearing loss." *Id.* at 960-61.

Unlike the plaintiffs in *Birdsong*, here, Plaintiffs need not allege habitual use because they do not claim the Products are *defective* and, instead, they explicitly and solely allege that Defendant misrepresented the Products as "Non-Habit Forming," causing Plaintiffs to spend money that they would not have otherwise spent if they knew the truth. *See Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1217 (S.D. Cal. 2012) ("the cases Mary Kay relies on in support of its argument against standing are irrelevant here. Those cases would only be relevant if Ms. Stanwood was seeking redress for an injury related to some defect in the products. She is not. Ms. Stanwood does not allege that she was, in any way, injured by using animal-tested products. Rather, she was injured because Mary Kay made false representations and omissions about its operations, which induced her to buy a non-defective product she otherwise would not have purchased.").

Similarly, in *Cahen*, the plaintiffs did not base their claims on any affirmative misrepresentation and, instead, claimed the defendants failed to disclose that "their vehicles are *susceptible* to hacking" and therefore defective. 717 F. App'x at 723 (emphasis added). The court rejected the plaintiffs' defect claims for lack of standing because the alleged risks of security breaches were unmanifested and therefore it was speculative to call the vehicles defective—*i.e.*, speculative that the plaintiffs suffered an injury. *Id.* The court also rejected the plaintiffs' false advertising claims founded on the alleged omission because their claimed disinclination to buy the vehicles, had they known the truth, was "not credible"

where "[n]early 100% of cars on the market include wireless technologies that could pose vulnerabilities to hacking or privacy intrusions," and the plaintiffs alleged no facts to suggest that the omission was material. *Id.* at 723-24.

Unlike the plaintiffs in *Cahen*, here, Plaintiffs allege Defendant affirmatively misrepresented the Products, not merely failed to disclose a purported risk of a "defect." Moreover, not only do Plaintiffs allege the importance to consumers of "Non-Habit Forming" sleep aids, but it does not take more than common sense to understand that people do not want to rely on medication every night to fall asleep— a fact that Plaintiffs allege Defendant knew when it decided to prominently label the Products with the Challenged Representation. *See* FAC ¶¶ 14, 16, 29, 33d (explaining the consumer demand for non-habit forming sleep aids, the Challenged Representation's prominence on the front labels with scant competing information, and the marketing industry's reservation of front labels for the most important claims that will drive sales); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label").

Likewise, Defendant relies on inapposite cases lacking any allegations regarding the price plaintiffs paid or asserting uncredible claims to argue, contrary to *binding* Ninth Circuit law set forth above, that Plaintiffs' alleged economic harm is "too conclusory." MTD at 9-11 (citing, for example, *Cahen*, 717 F. App'x 723 (distinguished above); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019); *Schippell v. Johnson & Johnson Consumer, Inc.*, 2023 WL 6178485, at *7 (C.D. Cal. 2023); and *La Barbera v. Olé Mexican Foods, Inc.*, 2023 WL 4162348, at *17 (C.D. Cal. 2023)). However, unlike the plaintiffs in Defendant's cases, here, Plaintiffs allege the prices they paid for each of the falsely advertised Products. *See* FAC ¶¶ 8b, 8f, 9b, 9f, 10b, 10f (further alleging that they would not have paid that amount, or they would have paid less than that amount, had they known the Challenged Representation was false). That is not only sufficient to allege economic harm in false advertising cases under controlling Ninth Circuit law (*see, e.g.*, *Davidson*, 889 F.3d at 965-66; *Hinojos*, 718 F.3d at 1103-08; *Maya*, 658 F.3d at 1069), but Plaintiffs simply do not need to plead evidence to support the exact dollar amount of the market value of the Products' "Non-Habit Forming" feature, as Defendant suggests.

It is *after* conducting necessary discovery, and at the time of trial or class certification, that

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiffs' experts in market research and economics will testify to the dollar amount of the price premium solely attributable to the Challenged Representation, or alternatively testify that reasonable consumers would not have bought the Products had they known that they are "Habit Forming," based on the Products' labels, market research, sales data, and their analyses. It is unprecedent to demand such detailed allegations at the pleading stage that will depend on Defendant's sales data and a complete array of Defendant's labels, which generally rests outside the public's knowledge and within Defendant's exclusive control. That creates a nearly insurmountable pleading hurdle under Article III for no purpose other than to prevent defrauded consumers from challenging out-of-state defendants' unlawful advertisements. This is simply not a case involving uncredible claims that necessitate corroborating facts to support allegations that the falsely advertised product attribute possesses some monetary value.

### B.   Plaintiffs Plausibly Plead Deception

Defendant asks this Court to dismiss the FAC, arguing reasonable consumers would not interpret the "Non-Habit Forming" claim to mean that the Products cannot lead to habitual use because the back-label contains purported disclaimers. Specifically, Defendant argues that any front-label deception is dispelled, as a matter of law, because *some*, not all, of the Products' back labels "state[] that [the Products] should be used 'for the relief of occasional sleeplessness,' should be taken only once a day, and that users should 'stop use and ask a doctor if sleeplessness persists continuously for more than 2 weeks.'" MTD at 12.[2] Additionally, Defendant argues that Plaintiffs' cited articles discussing the risks of habitual sleep aid use do not "offer any scientific" evidence that proves consumption of the Products, in fact, will cause consumers to habitually use them. MTD at 12, 14. However, as discussed below, Defendant's purported disclaimers neither contradict nor clarify the Challenged Representation. And, even if they did, inconspicuous fine print "disclaimers" on the back of the box do not dispel unambiguous front label deception. Lastly, Defendant merely disputes the truth of Plaintiffs' allegations

---

[2] As an initial matter, not all Products advise users to stop taking the sleep aids if sleeplessness persists for more than two weeks. For instance, the Calming Vanilla Cherry Products in the 12 oz size, which both Plaintiffs Sneed and Kouyate purchased (FAC ¶¶ 8b, 10b), do not contain that purported back label disclaimer (*id.* at Ex. 1-2A). *See also id.* at Ex. 1-3A – Ex 1-4B, Ex 1-4D – Ex 1-5H, Ex 1-5J – Ex 1-5M (no back labels provided for Product No. 3 Liquid Smooth Mango Berry, No. 4 Liquid Warm Berry in certain sizes, and No. 5 Liquid Capsules in certain sizes). Although Defendant could have requested judicial notice of its front and back labels for all Products, assuming the back labels bore the purported "disclaimers," Defendant chose not to do so. Instead, Defendant improperly strays beyond the four corners of the FAC to argue unpled facts.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

about whether non-scientific articles reporting habitual use provide sufficient evidence of falsity. But Plaintiffs have no obligation to *prove* the merits of the case at the pleading stage.

Plaintiffs plausibly alleged that the Challenged Representation leads reasonable consumers to believe the Products will not lead to habitual use. "To state a claim for false advertising or deceptive business practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (applying the CFA in false advertising case and quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) and citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995), among other cases); *accord Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("Under the reasonable consumer standard," governing the UCL, FAL, and CLRA, plaintiffs "must show that members of the public are likely to be deceived.") (quotations and citations omitted). And, here, Plaintiffs plausibly alleged that reasonable consumers are likely to interpret the prominent front-label "Non-Habit Forming" claim on the OTC sleep aids to mean that consuming the Products cannot lead to habitual use. It is not only the literal meaning of "Non-Habit Forming," but it is consistent with multiple dictionary, medical, and psychological definitions. *See* FAC ¶¶ 20-23, 28. Defendant has not, and cannot, dispute the literal meaning of "Non-Habit Forming."

Instead, Defendant contends that "[r]easonable consumers make 'contextual inferences'" to argue that the back label "disclaimers" dispel the front label deception. MTD at 12. While courts consider a challenged representation in the context of the entire advertisement, label, or packaging (*see, e.g.*, *Williams*, 552 F.3d at 939-40; *Mantikas*, 910 F.3d at 636), "[t]he reasonable consumer standard adopts the perspective of the 'ordinary consumer acting reasonably under the circumstances.'" *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003)). Thus, "[t]he reasonable consumer need not be 'exceptionally acute and sophisticated.'" *Id.* (quoting *Donaldson v. Read Magazine*, 333 U.S. 178, 189 (1948); *Lavie*, 105 Cal. App. 4th at 509 (same)). And, here, the clues that Defendant hopes consumers will piece together simply will not inform them that the Products, in fact, lead to habitual use. That the Products are designed to relieve sleeplessness does not mean that they will not lead to habitual use. Similarly, that the Products instruct consumers to take them once per day does not suggest that their daily intake will not lead to

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

habitual use. Rather, it encourages it. Lastly, that the Products warn consumers to seek medical advice if they have not slept for two weeks, or that they should stop using the Products at that point, likewise, does not inform consumers that, if they keep consuming the Products, they will develop a habit. The "disclaimers" simply do not disclaim that taking the Products will lead to habitual use.[3]

Even if they did, the Ninth and Second Circuits have unequivocally rejected Defendant's argument that inconspicuous back label claims insulate defendants from liability for literally false product attributes unambiguously advertised on the front labels. Simply put, "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from . . . small print on the side of the box." *Mantikas*, 910 F.3d at 637 (holding, under New York law, that the nutritional facts and ingredient list on Cheez-Its that disclose "enriched white flour" do not cure the deceptive "Whole Grain" front labels) (citations omitted); *Williams*, 552 F.3d at 939 (holding, under California law, that the absence of fruit listed among the fruit snack's ingredients does not cure the front label "fruit juice and other all natural ingredients" deception). To be sure, in rejecting the use of regulatorily required information on product packaging, like Defendant's purported "disclaimers," the Ninth Circuit explained: "We do not think that the FDA requires [disclosures] so

---

[3] Defendant cites a litany of inapposite cases to argue the back labels dispel the deception. *See* MTD at 12-13. But none of Defendant's cases involved an unequivocal challenged representation combined with wholly unrelated and, at best, ambiguous disclaimers regarding low-cost everyday purchases, like the Products in this case, and, instead, most involve fanciful implied claims that defy common sense. *See Moore v. Trader Joes Co.*, 4 F.4th 874, 882-84 (9th Cir. 2021) (consumers of niche specialty $266 honey, sold for $13.99, would be sophisticated enough to know that it is impossible to make honey from a single floral source, as the plaintiffs admitted); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023) ("nature's fusion" hair products is ambiguous at best because "fusion" literally means the products are not all-natural and the back labels clarify that ambiguity); *Robles v. GOJO Industries, Inc.*, 2023 WL 4946601, at *2 (9th Cir. 2023) (hand sanitizer's "Kills More than 99.99% of Germs," with an asterisk and back label claim clarifying that that it only kills the "most common" germs, was not deceptive because one would not expect a low cost hand sanitizer to "kill germs unknown to science or germs that are not found on the hands"); *Prescott v. Rite Aid Corp.*, 667 F. Supp. 3d 1011, 1011 (N.D. Cal. 2023) (consumers would not expect "maximum strength" OTC pain reliever to be stronger than all prescription pain medication); *Slaten v. Christian Dior Perfumes, LLC*, 2023 WL 6959127, at *4 (N.D. Cal. 2023) (consumers would not expect the ambiguous "24H Foundation" "With Sunscreen" to mean that the sunscreen and not the cosmetic foundation lasts 24 hours when the back labels direct consumers to "reapply at least every 2 hours"); *Engram v. GSK Consumer Healthcare Holdings (US), Inc.*, 2021 WL 4502439, at *5 (E.D.N.Y. 2021) (same with respect to ChapStick); *Meaunrit v. The Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *1, 9 (N.D. Cal. May 5, 2010) (literally true "microwavable" claim was not rendered deceptive, even though some microwaves might not heat the pies enough to kill *potential* pathogens, because the packaging explicitly instructed consumers on what wattage microwave and temperature consumers must use to make them safe for consumption); and *Meaunrit v. ConAgra Foods, Inc.*, 2010 WL 2867393, at *1, 8-9, 11 (N.D. Cal. July 20, 2010) (same)).

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that manufacturers can mislead consumers and then rely on the[m] . . . to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the [disclosure to] contain[] more detailed information about the product that confirms other representations on the packaging." *Williams*, 552 F.3d at 939-40.

California and New York's consumer-protection laws do not impose on average consumers an obligation to investigate or analyze product labels as lawyers might for some non-existent ambiguities, especially when purchasing an everyday, low-cost product. *See, e.g.*, *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) (finding, under New York law, that "a parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer."); *McKay v. Sazerac Co., Inc.*, 2023 WL 3549515, at *7 (N.D. Cal. May 17, 2023) (quoting *Danone*, 362 F. Supp. 3d at 123 to support a similar conclusion under California law). Instead, courts stress that reasonable consumers purchasing "everyday" items are likely to (and need only) exhibit a low degree of care. *Bell v. Publix Super Markets, Inc*, 982 F.3d 468, 479 (7th Cir. 2020).

At bottom, Defendant's "disclaimers" merely raise questions of fact—at best—that are inappropriate for resolution under Fed. R. Civ. P. 12(b)(6). These include: (1) whether consumers would even notice or read the fine print, back label statements; and (2) how consumers would interpret the back label statements about the Products' use for sleeplessness, daily intake instructions, and warning to stop use and seek a doctor's advice, in conjunction with the front label "Non-Habit Forming" claim. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014) (denying defendant's motion to dismiss because it was unclear to the court whether, as a matter of law, "a reasonable consumer might . . . focus on the more prominent portion of the product label . . . and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"). To be sure, a recommendation to consult a doctor and stop taking daily sleep aids after sleeplessness persists for two weeks may readily be interpreted as sound medical advice that has nothing to with avoiding habitual use and everything to do with a severe underlying sleep disorder that the Products simply cannot treat.

For this reason, it is only in "rare situation[s]" that a court may determine, as a matter of law,

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

that a challenged representation does not plausibly mislead reasonable consumers because "the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Budani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021); *accord Williams*, 552 F.3d at 938 (same); *Bell*, 982 F.3d at 478 (the "reasonable consumer" determination is a "fact-intensive" inquiry that takes into account "real market conditions and real consumers' behavior"). Indeed, "at least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled." *Budani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *accord Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world"). This case is simply not one of those "rare" situations where the plaintiffs set aside common sense and ignore directly related, concise, and unequivocal disclaimers to adopt a fanciful interpretation of an implied claim that is, at best, ambiguous on its face.[4]

Lastly, Defendant improperly disputes the merits of Plaintiffs' claim that "the Products promote[] habitual use as a part of consumers' nightly routine and Diphenhydramine, an ingredient used in the Products, can lead to frequent use over a prolonged period." FAC ¶ 31. As alleged in the FAC, there is a "cultural obsession" with taking sleep aids to fall or stay asleep, "fueling the rise of an entire industry." FAC ¶ 13 (citing Consumer Report survey finding 18% of sleep aid consumers take them daily and 41% have used them for at least a year, and American Academy of Sleep Medicine survey finding 51% of respondents reported use of sleep aids and, of those, 53% use them "often" and only 5% use them "rarely"); *id.* ¶ 23 (noting "[d]ata from the CDC shows that more than 8 percent of adults take a sleep aid more than four times a week as part of their routine to help fall asleep"). Sleep aids

---

[4] Defendant vaguely and cursorily argues that Plaintiffs' warranty and unjust enrichment claims fail for, essentially, the same reasons that Plaintiffs' UCL, FAL, CLRA, and CFA claims fail—namely, that the "Non-Habit Forming" claim is not deceptive. MTD 20, 21, 22. As this Court found in *Moore v. EO Prods., LLC*, 2023 WL 6391480, at *8 (N.D. Cal. Sept. 29, 2023) (J. Tigar), where "the Court has found that Plaintiffs adequately alleged that a reasonable consumer would be misled by the representations," they state a "basis for an unjust enrichment claim" and "breach of express warranty" claim. *See,* e.g., *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020); *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139, at * 9 (C.D. Cal. Oct. 16, 2017) (finding allegations of defendant's implied false-origin labeling claims sufficient to support plaintiff's claim for breach of implied warranty).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

inherently induce habitual use by their very nature. "Decades of psychological research demonstrate that repetition of a simple action (such as taking a sleep aid like the Product[s]) in a consistent context (before going to bed) leads to the action being activated upon subsequent exposure to the external cues (that is, habitually))." *Id.* ¶ 23 (citing, for example, medical journals supporting sleep aids' inherent risk of inducing habitual use). Thus, consumers may "develop a habit or otherwise frequently and repeatedly use the drug to fall or stay asleep because they incorporated it into their nightly routine," which "becomes more motorically reflexive and less dependent on motivational or cognitive influence. Indeed, consumers['] repeated use of the Products is likely to occur without their conscious awareness as the [Challenged] Representation coaxes consumers into using the Products without regard to frequency." *Id.* ¶ 25. Plaintiffs clearly inform Defendant why the Challenged Representation is false—namely that the Products are not "Non-Habit Forming" because they lead consumers to habitually use the Products.

Defendant's insistence that Plaintiffs must, at this early stage, conclusively *prove* that the Products foster and perpetuate habitual use is inappropriate because it misconstrues the relevant procedural standard on a Rule 12(b)(6) motion to dismiss. "Plaintiff is not required to prove her allegations to survive a 12(b)(6) motion to dismiss. Rather, a plaintiff need only plead factual allegations which, taken as true, indicate a plausible claim for relief." *Nishimoto v. Cty. of San Diego*, 2017 WL 2709742, at *5 (S.D. Cal. June 20, 2017) (citing Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). Indeed, numerous courts have rejected the contention that a plaintiff must prove the falsity of challenged representations in false advertising cases. *See, e.g.*, *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733, at *6 (N.D. Cal. July 28, 2021) ("[I]t is not the Court's role to determine on a motion to dismiss whether the Products are in fact toxic. It is enough at this stage that Plaintiffs have alleged that the Products 'contain certain ingredients, which, at their given concentrations in the Products, can cause harm to humans, animals, and/or the environment,' and that Plaintiffs detail the specific ingredients.") (citations omitted).[5]

---

[5] *Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1051 (N.D. Cal. 2018) ("The defendants appear to object to that factual allegation and intimate that 0.1%-concentration levels do not in fact cause people to suffer allergic reactions. But whether 0.1%-concentration levels actually cause people to suffer allergic reactions . . . is a fact issue that cannot be resolved on a motion to dismiss.") (footnote omitted); *Locklin v. StriVectin Operating Co., Inc.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Likewise, Defendant's gripes about scientific sources and opinions are not consistent with the district court's limited role on a motion to dismiss, which is to "test[ ] the legal sufficiency of a complaint, not the weight of the evidence in support of it." *Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*, 711 F. Supp. 1016, 1019 (E.D. Cal. 1989); *see also Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, 360 (9th Cir. 2009) ("[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case") (quotation omitted). Thus, "the issue of whether the proffered studies do in fact show that Defendants' representations are provably false is a question not properly decided on a motion to dismiss." *Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014); *see also Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016) ("Factual disputes about whether the studies actually prove that black cohosh is ineffective, or whether there is mere scientific debate regarding the benefits of black cohosh, cannot be resolved by the Court on a motion to dismiss."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("The Court finds unavailing defendant's contention that plaintiffs' claims should be dismissed because the studies plaintiffs cite do not, in fact, support the precise propositions for which they are cited. Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss.").

### C. Plaintiffs' Claims Are Not Preempted

Defendant contends that the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 379r(a) ("FDCA"), expressly preempts any state law that prohibits Defendant from marketing the Products as "Non-Habit Forming." MTD at 14-17. Specifically, Defendant argues that the FDA's approval of OTC Diphenhydramine's use as a sleep aid, in the absence of any authorization to market it as "Non-Habit Forming," preempts Plaintiffs' claims in this case. *Id.* Defendant is wrong.

"Section 379r(a) preempts state law claims to the extent that those claims 'would effectively require a manufacturer to include additional or different information on a federally approved label.'" *Morgan v. Albertsons Cos.*, 2023 WL 3607275, *5 (N.D. Cal. 2023) (J. Tigar) (quoting *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) and citing *Faustino v. Alcon Lab'ys, Inc.*, 2015 WL 12839161,

("StriVectin next argues that Locklin fails to 'show' that the four chemicals are actually dangerous to the reefs, and that the studies cited by the plaintiff do not 'establish' what they allege about the chemicals. But at the motion to dismiss stage, complaints need not 'show' or 'establish' anything.").

Case No. 4:23-cv-05443-JST                    -14-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

at *2 (C.D. Cal. Sept. 22, 2015), *aff'd sub nom. Faustino v. Alcon Lab'ys, Inc. (a division of Novartis AG)*, 692 F. App'x 819 (9th Cir. 2017)). "Conversely, claims are not preempted to the extent that they are at variance with the FDA-approved label. Thus, courts 'have declined to find preemption [where] ... label uniformity was not at issue.'" *Id.* (quoting *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 454 (2015)).

This case falls into the latter category. The "Non-Habit Forming" claim is neither mandated nor directly addressed by the FDA's final monograph for OTC sleep aids. Indeed, Defendant identifies no specific language within the final monograph or the regulations that expressly preempt the Challenged Representation. Instead, Defendant says the claim is preempted merely because the FDA, during the monograph process, *merely considered* whether Diphenhydramine could be habit-forming when used as a sleep aid under certain circumstances. MTD at 16.

Defendant relies on the *proposed* monograph, where the FDA noted that the sleep aid "*should* not be habit forming or addicting." MTD at 16 (citing 40 Fed. Reg. at 57,296) (emphasis added). But the proposed monograph and the tentative final monograph *actually* categorized a "non-habit forming" claim as *misleading*. *See* 40 Fed. Reg. at 57,303; 43 Fed. Reg. at 25,578. The tentative final monograph specifically concluded that "[t]he term 'non- habit-forming' is misleading, undesirable and probably false because it is very hard to prove that any product with psychotropic activity can be non-habit-forming; but more importantly, there is an insinuation that other OTC sleep-aid products obviously are habit-forming." 43 Fed. Reg. at 25,579. Further, the final monograph is silent on the "non-habit forming" claim (54 Fed. Reg. 6,814) and merely notes that diphenhydramine is "likely" not a serious risk to public health (54 Fed. Reg. at 6,825).

This very Court's decision in *Morgan*, 2023 WL 3607275 is instructive here. There, this Court specifically explained that "claims are not preempted to the extent that they are at variance with the FDA-approved label. Thus, courts have declined to find preemption [where] . . . label uniformity was not at issue." 2023 WL 3607275, at *5 (quotations and citations omitted). It then found that the "rapid release" claim at issue did not "go beyond the FDA-approved" designation set forth by the USP and incorporated by the tentative final monograph but that it was rather encompassed by that designation. 2023 WL 3607275, at *5.

Here, however, the Challenged "Non-Habit Forming" Representation goes beyond the FDA-

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

approved labels. Nothing in the sleep aid monograph at issue here authorizes OTC Diphenhydramine sleep aids to be labeled with the "Non-Habit Forming" claim. This Court's reasoning in *Morgan* therefore instructs that the "Non-Habit Forming" claim is not preempted because it is not specifically governed by the sleep aid monograph. *See also Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1101 (S.D. Cal. 2015) (finding certain of the plaintiff's false advertising claims were not preempted because state false advertising laws are not only consistent with the FDCA's prohibition on false and misleading labeling, but the challenged claims were unrelated to the labeling requirements of § 343(r)(6)); *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (same).

Defendant relies on unpersuasive cases to argue otherwise because they do not address sleep aid monographs or whether the "Non-Habit Forming" representation is specifically sanctioned under federal law. *See* MTD at 15 (citing *Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *2 (N.D. Cal. 2022) (finding no express or implied preemption over the amount of protein advertised on the front label); *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 35–36 (2d Cir. 2020) (preempting claims that would require the defendant to "make an additional disclosure on its packaging, indicating that some cream cannot be retrieved or that the cream that is accessible is less than the net quantity displayed on the package label."); *Gitson v. Trader Joe's Co.*, 2015 WL 9121232, at *1 (N.D. Cal. 2015) (limiting the preemption issue to a matter of whether the alleged claim violated the FDCA).

In sum, while Section 379r seeks uniformity for nonprescription drugs, it does not automatically preempt *all* state-level challenges to labeling and advertising practices, especially those that address misleading or additional claims not explicitly covered by FDA regulations. *See Morgan*, 2023 WL 3607275, at *5. Plaintiffs' claims do not seek to impose requirements that are different from, or in addition to, what is required for OTC Diphenhydramine sleep aids under federal law. Accordingly, this Court should deny Defendant's motion on preemption grounds. *See Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009) ("[T]he FDA has traditionally regarded state law as an additional layer of consumer protection that complements FDA regulation").

**D.    The Lack of Adequate Legal Remedies Supports Equitable Jurisdiction**

Defendant argues, based entirely on California law, that this Court lacks equitable jurisdiction over Plaintiffs Sneed and Cannon's UCL, FAL, and California unjust enrichment claims brought on

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

behalf of the California subclass, because California's breach of warranty and CLRA claims provide adequate legal remedies. MTD at 17, 22. Not only is Defendant's argument premature, but Defendant fails to recognize the very limitation it argues on legal damages and that monetary damages for past purchases are insufficient to remedy the future harm that an injunction prevents.

It is premature to dismiss equitable claims at the motion to dismiss stage. *See* FAC ¶ 36f; *see also, e.g.*, *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("The Court finds that [*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)] has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."); *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (holding that "because *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case . . . [and that] it is too early to determine whether the plaintiffs' legal remedies will ultimately be adequate, so it makes sense to defer this determination."); *Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) (holding that *Sonner* does not compel dismissal of equitable claims at the pleadings stage, as *Sonner* had a unique procedural posture, and *Sonner* "cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation."). Indeed, this very Court in *Milstead v. Gen. Motors LLC*, 2023 WL 4410502, at *8 (N.D. Cal. July 6, 2023) (J. Tigar) specifically determined that a challenge to equitable remedies is not suitable for adjudication at the motion to dismiss stage. *See In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *10 (N.D. Cal. Mar. 28, 2023) (collecting cases and noting that the majority of courts in this district require only that Plaintiffs plead that they lack an adequate remedy at law at the pleadings stage).

To the extent this Court chooses to follow *In re Apple Processor Litig.*, 2023 WL 595062, at *2 (9th Cir. Sept. 13, 2023), an unpublished and non-binding opinion, to require an explanation of how Plaintiffs' legal damages, under the CLRA and breach of warranty claims, differ from Plaintiffs' equitable restitution, under the UCL, FAL, and unjust enrichment claims, the Court may simply apply Defendant's own reasoning. Defendant argues that Plaintiffs cannot recover a full refund because legal damages are limited to the difference between the value received and the value promised. *See* MTD at 20 ("Plaintiffs' express warranty claims seek to recover the entire purchase price of the medicine . . .

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

but that theory is not viable. Instead, the measure of damages for an express warranty claim is 'the diminution in value between the [product] as warranted and the [product] as sold.' *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 966 (N.D. Cal. 2018).''). Restitution, on the other hand, permits recovery of the same price premium *or* a full refund in the event Plaintiffs prove that reasonable consumers would not have bought the Products had they known the truth. *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 951 (S.D. Cal. 2019) (finding that "[a]lthough the price less value received method is commonly employed, it is not the only measure of restitution," and rejecting the argument that the plaintiff cannot establish class-wide damages because they received some benefits from the drugs, reasoning that the plaintiff sought full restitution based on her theory that she and the class would not have bought the drugs, despite their benefits, had the defendant told the truth) (quotations omitted).[6]

Moreover, the UCL and unjust enrichment claims are much broader than the CLRA or breach of warranty because the UCL provides remedies for unfair, unlawful, and fraudulent business practices that may not trigger liability under those claims. *See* FAC ¶¶ 36b, 36e. Indeed, some courts find the various remedies are cumulative, not alternative, to one another. *See Ferry v. Porsche Cars N. Am., Inc.*, 2022 WL 1769120, at *5 (C.D. Cal. Mar. 11, 2022) (following *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021, n.13 (9th Cir. 2020), which rejected the defendants' "argument 'that Plaintiffs cannot seek equitable relief under the UCL or FAL, *given an adequate legal remedy under the CLRA*,' because of the observation – meaningful, or not, effectively – that 'the UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other'") (cleaned up).

Lastly, monetary damages to compensate Plaintiffs and the Class for past harms do not remedy the future harms that an injunction prevents. *See, e.g.*, *Souter v. Edgewell Personal Care Co.*, 2022 WL 485000, at *13 (N.D. Cal. Feb. 16, 2022) (denying dismissal of equitable claims "because [*Sonner*] does not apply to claims of false advertising that may result in a future harm . . . ."). *Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *8 (C.D. Cal. Feb. 10, 2021) (holding *Sonner* does not preclude the plaintiffs from

---

[6] *See also, e.g.*, *Russell v. Kohl's Dept. Stores, Inc.*, 2015 WL 12781206, at *4 (C.D. Cal. Oct. 6, 2015) ("Overall, this Court finds ample support in the case law for the proposition that cost minus value does not constitute the exclusive measure of restitution."); *Johns v. Bayer Corp.*, 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (finding no cases that "suggest that the difference in price paid and value received is the only proper measure of restitution"); *In Re Tobacco Cases II*, 240 Cal. App. 4th 779, 792 (2015) (explaining that the law does *not* suggest that "the difference in price paid and value received is the only proper measure of restitution").

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

seeking an injunction prohibiting the alleged unlawful conduct where plaintiffs allege a continuing risk of harm to the class and the public); *Andino v. Apple, Inc.*, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) (same); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 1541649, at *10 (S.D. Cal. Apr. 20, 2021) (same); *Coleman v. Mondelez Int'l., Inc.*, 2021 WL 6618557, at *6 (C.D. Cal. July 26, 2021) (same); *Zeiger v. WellPet LLC*, 2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) (same); *Heredia*, 2021 WL 819159, at *8 (same).

Defendant cursorily argues that Plaintiffs cannot seek an injunction, incorrectly claiming "Plaintiffs would not personally benefit from injunctive relief because they are now aware they should not use ZzzQuil for more than two weeks, thus dispelling their subjective belief that ZzzQuil is habit-forming." MTD at 19. *First*, Defendant's argument directly contradicts the facts pled in the FAC. Specifically, Plaintiffs allege that they "did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representation or otherwise suggested that the Products would or may cause habitual use," such as the purported 2-week "disclaimer." FAC ¶¶ 8e, 9e, 10e. Indeed, as discussed above, the purported 2-week limitation in the face of persistent sleeplessness is ambiguous at best and certainly does not inform Plaintiffs, or any consumers, that the Products are, in fact, habit forming.

*Second*, Defendant ignores binding Ninth Circuit law that rejects Defendant's argument that Plaintiffs cannot be deceived again after discovering the products were previously falsely advertised. In the landmark case *Davidson*, the Ninth Circuit squarely rejected the argument that a consumer's knowledge of a product's previously false advertisement precludes any plausible likelihood that she would suffer future harm. 889 F.3d at 1113, 1115 (finding a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."). This case mirrors *Davidson* in which the Ninth Circuit held that the consumer adequately alleged she faced an imminent or actual threat of future harm from being deceived by falsely advertised "flushable" products when she alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet" and "would purchase truly flushable wipes manufactured by [the defendant] if it

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

were possible." 889 F.3d 1116.

Consistent with *Davidson*, here, Plaintiffs allege that they "continue[] to see the Products available for purchase and desire[] to purchase [the Products] again if the Challenged Representation was in fact true" (FAC ¶¶ 8g, 9g, 10g); that Plaintiffs, however, "do[] not personally know whether the Products or diphenhydramine can lead to frequent use over prolonged periods, or the psychological impacts of sleep aides and whether they can or cannot lead users to habitually use them," and therefore "Plaintiff[s] . . . ha[ve] no way of determining whether the Challenged Representation on the Products is true" (*id.* ¶¶ 8h, 9h, 10h); and that "Plaintiff[s] . . . [are] unable to rely on the truth of the Challenged Representation on the Products' labels (*id.* ¶¶ 8i, 9i, 10i). *See also id.* ¶¶ 11 (further detailing the Plaintiffs' lack of sophistication and specialized knowledge about sleep aids and Diphenhydramine, and concluding that "Plaintiffs are at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. . . . In this regard, Plaintiffs are currently and in the future deprived of the ability to rely on the Challenged Representation to purchase the Products."). Thus, Plaintiffs have standing to seek an injunction because they are imminently at risk of future harm as a result of Defendant's false advertising. *See Chester v. TJX Companies, Inc.*, 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.'"); *see also Moore v. EO Prods, LLC*, 2023 WL 6391480, at *7 (N.D. Cal. Sept. 29, 2023) (J. Tigar) (finding allegations of imminent harm sufficient to establish standing for injunctive relief where the plaintiff alleges that he continues to see and wants to buy the products if the challenged representations were true, but he is unable to rely on their veracity because he does not know whether they are indeed true).[7]

### E.   Defendant Prematurely Moves to Dismiss Plaintiffs' Nationwide Claims

[7] To the extent the Court is inclined to dismiss Plaintiffs' equitable claims for lack of jurisdiction, Plaintiffs respectfully request the dismissal be *without prejudice* to Plaintiffs' refiling in state court. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction 'should be ... without prejudice so that a plaintiff may reassert his claims in a competent court.'" (quoting *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988))); Fed. R. Civ. P. 41(b) (stating that a dismissal "for lack of jurisdiction" generally does not "operate[ ] as an adjudication on the merits"); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 393 (1946) (noting that the court below dismissed the equity suit without prejudice because the suit failed on procedural grounds).

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Defendant asks this Court to dismiss Plaintiffs' nationwide claims for breach of express and implied warranty and unjust enrichment, prematurely arguing that Plaintiffs "fail[] to allege under which state's law they are bringing their claims." MTD at 19; *see also id.* at 22 ("Plaintiffs' nationwide unjust enrichment claim fails at the outset because they 'failed to allege which state law governs'"). Not so. On the caption of the FAC, Plaintiffs identify the law or state's law that applies to their claims. FAC p. 1. Additionally, Plaintiffs identify each claim they assert on behalf of their respective state subclasses in separate counts.[8] Although Plaintiffs do not explicitly identify a particular state's law that applies to the nationwide claims in counts 6 and 9, California law presumptively applies unless there is a true conflict of governmental interests and the foreign jurisdiction's interests would be more severely impaired by the application of California law. *Global Commodities Trading Group, Inc. v. Beneficio de Arro Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020).

To the extent Defendant prematurely challenges the application of California's breach of warranty and unjust enrichment laws to the Nationwide Class's claims, without any discovery or class certification motion on file, Defendant has failed to demonstrate that California's laws materially conflict with the laws of any other states. Indeed, "a detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record." *Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *4 (C.D. Cal. Dec. 17, 2019) (quoting *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017) (citations omitted)). It is for this reason that courts "rarely undertake [a] choice-of-law analysis to strike class claims at this early stage in litigation." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012). "Until the Parties have explored the facts in this case, it would be premature to speculate about

---

[8] Additionally, Plaintiffs specify, in counts 7 and 10, that "Plaintiffs Sneed and Cannon bring [their breach of warranty and unjust enrichment] claim[s] individually and on behalf of the California Subclass." *See* FAC ¶¶ 140, 165. In counts 8 and 11, they specify that "Plaintiff Kouyate brings [his breach of warranty and unjust enrichment] claim[s] individually and on behalf of the New York Subclass" *See id.* ¶¶ 149, 172. Under the headings for counts 7 and 8, Plaintiffs California and New York breach of warranty claims, Plaintiffs identify the applicable California and New York statutes, Cal. Comm. Code §§ 2313, *et seq.*, and N.Y. UCC §§ 2313, *et seq. See id.* at pp. 49, 52, 57, 58. For counts 10 and 11, Plaintiffs' California and New York unjust enrichment claims, Plaintiffs identify, on the caption for the FAC, the laws of each state that applies to those claims. *Id.* at p. 1 (*e.g.*, "10. Unjust Enrichment (under California Law) . . . 11. Unjust Enrichment (under New York Law)."). Lastly, in counts 6 and 9, Plaintiffs assert breach of warranty and unjust enrichment claims on behalf of putative members of the Nationwide Class who are not currently parties to this action. *See id.* at pp. 46, 55.

whether the differences in various states' consumer protection laws are material in this case." *Id.* That is because "[t]he fact that two or more states are involved does not itself indicate that there is a conflict of law problem. A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).

### F.      **Plaintiffs Sufficiently State a Claim for Breach of Express and Implied Warranty**

Defendant moves to dismiss Plaintiffs California and New York express and implied warranty claims based entirely on California law. *See* MTD at 20-21. As an initial matter, Plaintiff Kouyate's claims are explicitly premised on New York law, not California law, and so Defendant's motion should be denied on those grounds. *See* FAC pp. 1, 52, 58. Next, Defendant makes three arguments to dismiss Plaintiffs Sneed and Cannon's California warranty claims.

*First*, Defendant argues that California law only permits recovery of the difference between the value warranted and received, as opposed to a full refund. MTD at 20. Even if that were true, Plaintiffs allege a price premium theory of recovery, as an alternative to a full refund theory, to support their claims. *See* FAC ¶¶ 5, 8f, 9f, 10f, 34, 131, 139, 148 (alleging Plaintiffs dual primary objectives in bringing this action include, *inter alia*, "a monetary recovery of the price premium Plaintiffs and consumers overpaid for the Products," that Plaintiffs "would not have purchased the Product, or would not have paid as much for the Product," that "Plaintiffs and similarly situated consumers would not have purchased the Products, or would not have overpaid a price premium for the Products, if they had known the Challenged Representation was false," and that Plaintiffs "incorporate by reference all allegations contained in th[e] complaint, as though fully set forth" in each warranty cause of action).

*Second*, Defendant also argues that Plaintiffs' implied warranty claims fail because Plaintiffs must allege that the Products are not fit for their ordinary purpose. MTD at 21. That is not required. To state a claim for breach of implied warranty of merchantability, Plaintiffs may allege that a product is not fit for purpose or, alternatively, that it "do[es] not conform to the promises or affirmations contained on the container or label." *Morris v. Mott's LLP*, 2019 WL 948750, at *6 (C.D. Cal. 2019) (citation omitted); *see also* Cal. Com. Code § 2314(2)(f).[9] Plaintiffs alleged, consistent with the law, that the Products do

---

[9] *Traction v. Viva Labs, Inc.*, 2017 WL 4125053, at *8 (S.D. Cal. Sept. 18, 2017) ("[M]erchantability"

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

not conform to the Challenged Representation on the Products' labels and packaging. *See* FAC ¶¶ 134, 142.

*Third*, Defendant incorrectly argues that Plaintiffs' implied warranty claim fails because they must establish vertical privity between Plaintiffs and Defendant. MTD at 21. But that is not the law in California. While, generally, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant… [s]ome particularized exceptions to the rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 924 (E.D. Cal. 2020); *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at \*5 (N.D. Cal. Mar. 1, 2018); *Woodard v. Labrada*, 2017 WL 3309765, at \*16 (C.D. Cal. Jul. 31, 2017) (denying motion to dismiss for lack of privity in false advertising case where plaintiffs did not directly purchase the products from the defendant-manufacturer); *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 257-258 (2006). Additionally, California law does not require privity because consumers are "the intended third-party beneficiaries" of those warranties. *Woodard*, 2017 WL 3309765, at \*17 (citing *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116 (2008)); *accord Mack v. LLR, Inc.*, 2018 WL 6927860, at \*13 (C.D. Cal. Aug. 15, 2018).

### G.    Plaintiffs' Unjust Enrichment Claim is Proper

Defendant moves to dismiss Plaintiffs California and New York unjust enrichment claims based entirely on California law. *See* MTD at 22-23. As an initial matter, Plaintiff Kouyate's claims are explicitly premised on New York law, not California law, and so Defendant's motion should be denied on those grounds. *See* FAC pp. 1. Next, Defendant argues that Plaintiffs' unjust enrichment claims are barred because Plaintiffs also allege a contract between Defendant and Plaintiffs, *vis-a-vis*, their warranty claims. But the law expressly allows Plaintiffs to plead claims in the alternative. *See* Fed. R. Civ. P. 8(e)(2).

---

includes "a product that conforms to the promises or affirmations of fact made on the container or label."); *Kanfer*, 142 F. Supp. 3d at 1104 ("The implied warranty of merchantability 'is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used.'") (quoting *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 978 (N.D. Cal. 2022)); *Scott v. Saraya USA, Inc.*, 2023 WL 3819366, at \*8 (N.D. Cal. June 5, 2023) (denying defendant's motion to dismiss implied warranty claims that "allege[d] that the statements 'monk fruit sweetened' and 'sweetened with monk fruit' amount to an 'implied promise in the products' labeling that the products are solely, or at the very least predominantly, sweetened with monk fruit.'").

### H.    This Court Has Personal Jurisdiction for Plaintiff Kouyate's Claims

Defendant contends that this Court lacks personal jurisdiction over Defendant with respect to Plaintiff Kouyate's claims. MTD at 23. The Court should reject Defendant's request in favor of exercising personal pendent jurisdiction.

Plaintiffs acknowledge that this Court in *Pereda v. Gen. Motors LLC* refused to exercise pendent personal jurisdiction for non-resident plaintiffs' claims against a non-resident defendant because their claims arose from out-of-state activities. 2022 WL 19975388, at *5 (N.D. Cal. 2022). However, neither the Supreme Court nor the Ninth Circuit have specifically ruled that pendent personal jurisdiction cannot be exercised by a federal court sitting in diversity. And the Ninth Circuit has definitively said that "the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court," and shaped by "considerations of judicial economy, convenience and fairness to litigants." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).

Maintaining Plaintiff Kouyate's claims in this Court will not unfairly prejudice or inconvenience Defendant. There is no dispute that this Court has personal jurisdiction over Defendant with respect to Plaintiffs Sneed and Cannon's claims. And the potential result of having a separate lawsuit in New York, should pendent personal jurisdiction be denied, would not only be inconvenient for both parties and require simultaneous litigation in multiple forums, but it would needlessly waste limited judicial resources. The Court's discretion in matters of jurisdiction, coupled with the overarching goal to streamline judicial processes and avoid duplicative litigation, supports the notion that this Court should exercise its discretion, keep Plaintiff Kouyate's claims in this Court and jurisdiction, and deny Defendant's request to dismiss them.

### I.    This Court Should Not Strike Plaintiffs' Online Advertising Allegations

Finally, Defendant improperly seeks to strike allegations regarding Defendant's online advertising campaign designed to convince consumers that the Products are "Non-Habit Forming." MTD at 24-25. Defendant does not move to dismiss any particular cause of action, but instead suggests that "[t]o the extent Plaintiffs seek to challenge . . . digital advertisements" (MTD at 24-25 (citing FAC ¶¶ 15-18)), "Plaintiffs do not have Article III standing to assert claims based on statements they "never saw." *Id.* But Fed. R. Civ. P. 12(b)(6) does not provide a vehicle for such relief. *See, e.g., Franklin v.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Midwest Recovery Sys., LLC*, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (declining to dismiss part of a UCL claim because Rule "12(b)(6) does not provide a mechanism for dismissing only a portion of a claim"); *OC Ramps, Inc. v. Keen Ramps, Inc.*, 2018 WL 7504408, at *2 (C.D. Cal. Dec. 13, 2018) ("Defendants cannot use Rule 12(b)(6) to dismiss a mere alternative theory of liability where the underlying claims remain otherwise intact."). To the extent this Court interprets Defendant's motion to dismiss as a Fed. R. Civ. P. 12(f) motion to strike, Plaintiffs' allegations are not "redundant, immaterial, impertinent, or scandalous." First, paragraphs 15 and 16 do not discuss Defendant's digital advertising campaign. They discuss Defendant's general brand strategy and specifically discuss the Challenged Representations on the Products' labels. FAC ¶¶ 15-16. Plaintiffs' allegations in paragraphs 17 and 18 discuss Defendant's online advertisements. These allegations demonstrate the materiality of the Challenged Representations in that they are part and parcel to Defendant's overall marketing strategy to convince consumers that the Products are "Non-Habit Forming." *Duran v. Hampton Creek*, 2016 WL 1191685, at *5 (N.D. Cal. Mar. 28, 2016) (finding that allegations about a website that did not form the basis of a claim were probative of the defendant's knowledge and intent, noting "the false claims on the website" were "part of a larger scheme of false advertising") (quotations and footnote omitted).

## III.  <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss or, alternatively, grant Plaintiffs leave to amend. *Smith v. Jackson*, 84 F. 3d 1213, 1217 (9th Cir. 1996) (dismissal of a complaint without leave to amend is proper only where "it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief."); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding that the Ninth Circuit requires this policy favoring amendment be applied with "extreme liberality").

DATED: March 1, 2024                                    Respectfully submitted,

                                                        **CLARKSON LAW FIRM, P.C.**

                                                        By:   */s/ Katherine A. Bruce*
                                                              Ryan J. Clarkson
                                                              Katherine A. Bruce
                                                              Alan Gudino

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265