UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STEPHEN SNEED, et al., | Case No. 23-cv-05443-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART DENYING INP PART MOTION TO DISMISS** |
| THE PROCTER & GAMBLE COMPANY, | Re: ECF No. 24 |
| Defendant. | |

Before the Court is Defendant Proctor & Gamble Company's ("P&G") motion to dismiss. ECF No. 24. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

P&G, an Ohio corporation, sells several "Nighttime Sleep Aid" products (hereinafter, "Product(s)") containing diphenhydramine hydrochloride ("diphenhydramine") under the ZzzQuil brand. ECF No. 23 ¶¶ 2, 4, 12.

Plaintiff Stephen Sneed is a California resident who purchased the 12-ounce Liquid Calming Vanilla Cherry Product for approximately $12.00 from a CVS store in Berkeley, California in or around Winter of 2022. *Id.* ¶¶ 8(a),(b). Plaintiff Nickolas Cannon, also a California resident, purchased a Liquid Capsule Product for approximately $15.00 from a Walmart store in Orangevale, California in or around February 2023. *Id.* ¶¶ 9(a),(b). Plaintiff Moussa Kouyate resides in New York. *Id.* ¶ 10(a). She purchased the 12-ounce Liquid Calming Vanilla Cherry Product for approximately $12.00, the 6-ounce Liquid Soothing Mango Berry Product for approximately $15.00, the 6-ounce Liquid Warming Berry Product for approximately $7.00, and the 12-ounce Liquid Warming Berry Product from a Target store in Bronx, New York approximately four times per Product (totaling 16 purchases) between November 2020 and May

United States District Court
Northern District of California

2023.  *Id.* ¶ 10(b).

Per the first amended complaint ("FAC"), "more than one third of American adults are not getting enough sleep regularly."  *Id.* ¶ 13.  "Thus, consumers turn to sleep-aid products in search for sleep, which has become a "cultural obsession—fueling the rise of an entire industry."  *Id.* Plaintiffs further assert that "consumers prefer and desire sleep-aid products that cannot and do not cause habitual use."  *Id.* ¶ 14.

Plaintiffs bring this action on behalf of a nationwide class, alleging that P&G "falsely and misleadingly advertises, labels, and packages certain" of its ZzzQuil Nighttime Sleep Aid products as "Non-Habit Forming" (hereinafter, "Habit Representation" and/or "Challenged Representation").  According to Plaintiffs, the Products contain diphenhydramine, which "is an ingredient that can lead consumers to frequently use the Product over a prolonged period, contrary to the Challenged Representation disclaiming the Products' potential to be 'habit forming.'"  *Id.* ¶ 3.  Plaintiffs further contend that such representations coax "reasonable consumers, including Plaintiffs, to incorrectly believe that the Products do not and cannot cause habitual use."  *Id.* ¶ 2.

Plaintiffs bring claims for (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500 *et seq*.; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.; (4) violation of New York's Consumer Fraud Act, N.Y. GBL §§ 349, *et seq*.; (5) violation of New York's Consumer Fraud Act, N.Y. GBL §§ 350, *et seq*.; (6) breach of warranty on behalf of a nationwide class; (7) breach of warranty in violation of Cal. Comm. Code §§ 2313 *et seq*.; (8) breach of warranty in violation of N.Y. UCC §§ 2313, 2314; (9) unjust enrichment on behalf of a nationwide class; (10) unjust enrichment under California law; and (11) unjust enrichment under New York law.  *See* ECF No. 23 at 1.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

United States District Court
Northern District of California

### III.     LEGAL STANDARD

#### A.     Rule 12(b)(1)

"Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[.]" *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014).

#### B.     Rule 12(b)(2)

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted). Since the Supreme Court's "seminal decision in International Shoe," courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct*., 582 U.S. 255, 262 (2017) (citation omitted). "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp*., 368 F.3d at 1180

3

(collecting cases).

### C.    Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### IV.    DISCUSSION

### A.    Standing

P&G moves to dismiss Plaintiffs' complaint on the ground that Plaintiffs lack Article III standing. First, P&G contends that "Plaintiffs do not allege that they *personally* have suffered an injury in fact because they do not allege that they personally developed a habit of using ZzzQuil." ECF No. 24 at 18. Second, P&G argues that "Plaintiffs lack Article III standing to pursue economic damages for the independent reason that their allegations of harm are too conclusory." *Id.* at 20. As set forth below, the Court disagrees.

Plaintiffs need not allege that they personally developed a habit of using ZzzQuil in order

4

to demonstrate injury in fact. "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing" *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972). Plaintiffs allege that they would not have purchased the products, or would not have paid as much for the products, had they known that the representation regarding non-habit formation was false. ECF No. 23 ¶¶ 8(f), 9(f), 10(g), 11. "This is a quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Next, P&G contends that Plaintiffs' allegations of harm are too conclusory, as they allege that they have "supposedly been charged a 'price premium' for the ZzzQuil medicine . . . but they make no attempt to allege any facts sufficient to demonstrate that they paid any premium attributable to the 'non-habit forming' representation." ECF No. 24 at 20. In support of this proposition, P&G relies on *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019), which held that "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury" under New York law. The *Naimi* court reasoned that "a plaintiff's allegation that she would not have purchased a product but for a deceptive act, standing alone, is not a cognizable injury because it conflates the deceptive act with the injury." *Id.*

P&G's reliance on *Naimi* is misplaced. As noted by another court in this district, "[t]he court [in *Naimi*] did not analyze the sufficiency of the allegation under either Ninth Circuit or California law." *Sinatro v. Barilla Am., Inc.*, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022); *see also Bryan v. Del Monte Foods, Inc.*, No. 23-CV-00865-MMC, 2023 WL 4758452, at *2 (N.D. Cal. July 25, 2023) (declining to follow *Naimi*). "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965–66 (9th Cir. 2018); *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (internal quotation marks omitted) ("The lost money or property requirement therefore requires a plaintiff to demonstrate some form of economic injury as a result of his transactions with the defendant."). Here, Plaintiffs allege the price they paid for their respective products, and state that they would not have paid that amount had they known the "non-habit forming" representation was false. That is sufficient to allege economic injury and confer standing under Ninth Circuit law.

Accordingly, the Court declines to dismiss Plaintiffs' complaint on the ground that they lack Article III standing.

### B.    Personal Jurisdiction

The Court now turns to P&G's argument that "[a]ll claims asserted by Plaintiff Kouyate, a New York resident, should be dismissed for lack of personal jurisdiction." ECF No. 24 at 33. P&G contends that neither general nor specific jurisdiction applies to Plaintiff Kouyate, and that the Court should decline to exercise pendent personal jurisdiction over her. Plaintiffs do not respond to either P&G's general jurisdiction or specific jurisdiction arguments, and the Court finds that it lacks both kinds of jurisdiction with respect to Plaintiff Kouyate's claims against P&G. *See Zellerino v. Roosen*, No. SACV 16-485-JLS, 2016 WL 10988763, at *5 (C.D. Cal. Aug. 22, 2016) ("Zellerino fails to respond to the argument that the Court cannot exercise general personal jurisdiction over either Equifax or Datamyx, thereby conceding the point."). The only remaining question is whether the Court may exercise pendent jurisdiction over Plaintiff Kouyate's claims.

As Plaintiffs themselves acknowledge, this Court previously "refused to exercise pendent personal jurisdiction for non-resident plaintiffs' claims against a non-resident defendant" in a fairly analogous case "because [those] claims arose from out-of-state activities." ECF No. 28 at 32 (citing *Pereda v. Gen. Motors LLC*, No. 21-CV-06338-JST, 2022 WL 19975388, at *4 (N.D. Cal. Dec. 9, 2022)). Nonetheless, they contend that "the Ninth Circuit has definitively said that 'the exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court,' and shaped by 'considerations of judicial economy, convenience, and fairness to litigants.'" *Id.* at 32–33 (quoting *Action Embroidery Corp.*, 368 F.3d at 1180–81). While *Action Embroidery* remains good law, the Court remains persuaded by "the weight of authority [that] weighs heavily against the exercise of pendent jurisdiction in a diversity case such as this one." *King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC, 2020 WL 663741, at *6 (N.D. Cal. Feb. 11, 2020); *see also Bristol-Myers Squibb Co.*, 582 U.S. at 263 (holding that the Due Process Clause can divest a court of jurisdiction "even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum

State has a strong interest in applying its law to the controversy; [and] even if the forum State is the most convenient location for litigation").

Thus, the Court declines to assert pendent jurisdiction over Plaintiff Kouyate's claims because these claims arise out of out-of-state activities with no connection to California.

### C.    Preemption

P&G argues that preemption is appropriate under 21 U.S.C. § 379r in light of "the FDA's approval of OTC nighttime sleep-aids." ECF No. 24 at 24. Pushing back on this claim, Plaintiffs contend that "Defendant identifies no specific language within the final monograph or corresponding regulation" that expressly preempt the Challenged Representation. ECF No. 28 at 23.

"Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022) (quoting *Beaver v. Tasadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)). Enacted as Section 751 of the Food and Drug Administration Modernization Act of 1997, Pub L. No. 105-115, 111 Stat. 2374-76 (1997), Section 379r(a) includes an express preemption clause that provides that "no State . . . may establish or continue in effect any requirement . . . that is different from or in addition to, or that is otherwise not identical with" federal law. 21 U.S.C. § 379r(a); *see Carter v. Novartis Consumer Health*, 582 F. Supp. 2d 1271, 1279 (C.D. Cal. 2008). Effectively, "Section 379r(a) preempts state law claims to the extent that those claims 'would [] require a manufacturer to include additional or different information on a federally approved label.'" *Morgan v. Albertsons Companies, Inc.*, No. 22-CV-02948-JST, 2023 WL 3607275, at *5 (N.D. Cal. Mar. 13, 2023). "[C]laims are not preempted to the extent that they are at variance with the FDA-approved label." *Id.* And in a similar vein, "state law claims 'that go beyond the FDA-approved labeling and advertising,' are not preempted because such claims would not be 'at variance with FDA regulations.'" *Id.* (quoting *Carter*, 582 F. Supp. 2d at 1283, 1286).

P&G avers that "the FDA expressly considered—and rejected—the contention that products containing diphenhydramine are habit-forming during the monograph process." ECF No. 24 at 26. In support of that position, it states that "[t]he FDA's tentative final monograph found

7

'little to no pharmacologic potential for abuse of the ingredients in OTC nighttime sleep-aids,' and that antihistamines like diphenhydramine 'have generally been regarded as having low abuse potential and no ability to create dependency' when used as a sleep aid for two weeks or less." *Id.* (quoting 43 Fed. Reg. at 25,545, 25,574). At bottom, P&G asserts that if Plaintiffs proceed with their claims, "there would be the possibility of conflicting factual determinations about whether diphenhydramine is habit forming when used as directed." *Id.* at 27.

A closer examination of the tentative final monograph and the final monograph present a different picture. As Plaintiffs point out, "[t]he tentative final monograph specifically concluded that "[t]he term 'non-habit-forming' is misleading, undesirable and probably false because it is very hard to prove that any product with psychotropic activity can be non-habit forming; but more importantly, there is an insinuation that other OTC sleep-aid products obviously are habit-forming." ECF No. 28 at 23 (quoting 43 Fed. Reg. at 25,579). And further, the final monograph makes no mention of any "non-habit forming" claims at all. *See generally* 54 Fed. Reg. 6,814. Thus, contrary to P&G's position, there would not be a possibility of conflicting factual determinations about whether diphenhydramine is habit forming when used as directed.

Because Plaintiffs' claims would not impose requirements on manufacturers that are additional to or different from what the FDA requires, they are not preempted. If anything, Plaintiffs' claims "go beyond the FDA-approved labeling and advertising." *Morgan*, 2023 WL 3607275, at *5. Accordingly, the Court declines to find Plaintiffs' state-law claims preempted.

**D.   Equitable Jurisdiction**

P&G asserts that Plaintiffs' UCL and FAL claims brought under California law fail because "they are 'equitable rather than legal in nature,'" ECF No. 24 at 27 (quoting *Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 322 (2020)), and "Plaintiffs are 'obligated to allege that [they] had no adequate legal remedy in order to state a claim for equitable relief.'" *Id.* (quoting *In re Apple Processor Litig.*, 2023 WL 595062, at *2 (9th Cir. Sept. 13, 2023) and citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Plaintiffs disagree, arguing that "[i]t is premature to dismiss equitable claims at the motion to dismiss stage." ECF No. 28 at 25.

In *Sonner*, the Ninth Circuit held that "a federal court must apply traditional equitable principles before awarding restitution." 971 F.3d at 841. Nonetheless, "[t]his Court, together with the majority of courts in this district, understands *Sonner* to require far less at the pleading stage." *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1012 (N.D. Cal. 2023); *see Murphy v. Olly Public Benefit Corp.*, No. 22-cv-03760-CRB, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. Jan. 17, 2023) ("*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage. Plaintiffs alleged that legal remedies were not as certain as equitable remedies. That is sufficient.") (internal citation omitted); *Carroll v. Myriad Genetics*, No. 22-cv-00739-YGR, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) ("*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims."); *Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) ("[The plaintiff] is not barred by *Sonner* . . . from pursuing alternative remedies at this early stage of the suit."); *Jeong v. Nexo Fin. LLC*, No. 21-cv-2392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("There is no binding precedent that holds that pleading equitable restitution in the alternative is improper.").

Here, Plaintiffs plead that they "are entitled to equitable relief as no adequate remedy at law exists." ECF No. 23 ¶ 36. That is sufficient at this stage of the litigation. Accordingly, P&G's motion to dismiss on this ground is denied.

### E.      Injunctive Relief

Additionally, P&G contends that "Plaintiffs would not personally benefit from injunctive relief because they are now aware they should not use ZzzQuil for more than two weeks, thus dispelling their subjective belief that ZzzQuil can be habit-forming." ECF No. 24 at 29. In their amended complaint, Plaintiffs allege that they "desire to purchase the Products again." ECF No. 23 ¶ 11. They claim that "despite the fact that the Products were once marred by false advertising or warranties[,] Plaintiffs would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representation on their labels, packaging, and Defendant's advertisements." *Id.* And they assert that they are "at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiffs may buy them

United States District Court
Northern District of California

again, believing they are no longer falsely advertised and warranted and instead believing that they comply with the Challenged Representation." *Id.*

In the Ninth Circuit, a plaintiff has standing to pursue injunctive relief if: "(1) the consumer[ ] plausibl[y] alleg[es] that they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer[ ] plausibl[y] alleg[es] that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816, at *5 (N.D. Cal. Mar. 10, 2022) (citation omitted). As set forth in the preceding paragraph, Plaintiffs satisfy these requirements. Therefore, Plaintiffs have plausibly alleged that they have standing to pursue injunctive relief.

### F.      Failure to State a Claim

To succeed on their state law claims, Plaintiffs must prove that P&G made false or deceptive statements. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (holding that claims under the UCL, FAL, and CLRA "require[] that [plaintiffs] 'show that members of the public are likely to be deceived'" (citation omitted)).

"To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that [P&G's] allegedly deceptive [labels and] advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)). The Ninth Circuit has made clear that granting a motion to dismiss is appropriate only in "the rare situation" where "it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Under the reasonable consumer standard, "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

P&G moves to dismiss Plaintiffs' claims on the ground that "Plaintiffs fail to allege

United States District Court
Northern District of California

10

anything false or deceptive about the 'non-habit forming' representation."  ECF No. 24 at 21.

Specifically, P&G's arguments are two-fold.  First, P&G avers that the medicine's package,

including its back labels, includes adequate disclosures that would not mislead a reasonable

consumer.  *See* ECF No. 24 at 22; *see also* ECF No. 23-1 at 7, 17, 43.  Second, P&G contends that

Plaintiffs fail to state a claim because they do not identify "any scientific studies or other source

that establish that ZzzQuil . . . or diphenhydramine in general are capable of causing habits to be

formed."  ECF No. 29 at 14.  The Court analyzes each in turn.

### a.      Adequate Disclosures

The crux of P&G's first argument is that reasonable consumers "make 'contextual

inferences'" about the products they purchase, including "consult[ing] the 'drug facts" section of

medicine before taking it.  ECF No. 24 at 22; *see* ECF No. 29 at 12.  All but one of the Product

labels included in Plaintiffs' first amended complaint state that the medicine should be used "for

the relief of occasional sleeplessness," should be taken only once a day, and that users should

"stop use and ask a doctor if sleeplessness persists continuously for more than 2 weeks."  *See* ECF

No. 23-1 at 7, 17, 43 .  P&G asserts that because available disclaimers inform consumers "to 'stop

use' after two weeks" (among other instructions), P&G cannot be held liable should a plaintiff

choose to ignore "the FDA-mandated directions, "use[] the product more frequently than directed,

and develop[] a habit as a result."  ECF No. 29 at 13.  Plaintiffs respond that P&G's

"inconspicuous fine print 'disclaimers' on the back of the Products do not dispel deception" from

the front labels.  ECF No. 28 at 15.

Plaintiffs have the better argument.  The Court agrees with P&G that it is implausible that

a significant portion of reasonable consumers would "rely only on the front of a medicine's

package and not consult directions on the back label."  *Id.* (citing *Moore*, 4 F.4th at 882–83).  As

P&G points out, ZzzQuil is medicine and, unlike in the food, beverage, and household products

sphere, "consumers [are] accustomed to seeing the FDA-mandated 'Directions' on the back of an

over-the-counter product."  *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-

CV-2886(EK)(PK), 2021 WL 4502439, at *5 (E.D.N.Y. Sept. 30, 2021).  But the directions on the

back to stop using the product after two weeks are of no value if a consumer has become addicted

to the product, because that consumer will not be able to follow the directions—that's what addiction means.  P&G's motion on this ground is therefore denied.

In addition, as P&G concedes, not all of the ZzzQuil products "include the full directions on the product labels."  ECF No. 29 at 15.  One Product, the 12-ounce Liquid Calming Vanilla Cherry, "includes only a portion of the product package, and does not include the full back label."  ECF No. 29 at 14.  P&G contends that consumers may search a weblink on the back label that "reveals the full product package."  *Id*.  The court categorically rejects the idea that a reasonable consumer is expected to go to such lengths to receive complete disclosures about a product.  While P&G cites to *Browning v. Am. Honda Motor Co*., 549 F. Supp. 3d 996 (N.D. Cal. 2021) to support this proposition, that reliance is misplaced.  In discussing principles of judicial notice, the *Browning* court held that "Courts [] routinely consider the full page of a website where, as here, a portion of the page is quoted or relied on in the complaint."  *Id.* at 1004 (internal quotations and citations omitted).  Judicially noticing a document on which a complaint relies is a different thing entirely from requiring consumers to visit a webpage to uncover complete product disclosures.  Therefore, in regard to the 12-ounce Liquid Calming Vanilla Cherry Product, the Court declines to dismiss Plaintiffs' allegations on this additional ground.

### b.      Lack of Scientific Studies

P&G's alternative argument is that Plaintiffs fail to state a claim because the amended complaint "does not identify any scientific studies or other source that establish that ZzzQuil in particular or diphenhydramine in general are capable of causing habits to be formed."  ECF No. 29 at 14.

None of the articles cited in the first amended complaint support Plaintiffs' claim that "Diphenhydramine HCI [sic] users are at risk of habitually using those products."  ECF No. 23 ¶ 25.  Plaintiffs do cite numerous articles concerning the rise of sleep-aids, what defines a "habit," and how habits are formed.  *See, e.g.*, *id.* at 13 n.2; *id.* at 23 n.16, 17.  But only one source—a 2016 article from Consumer Reports—is offered to substantiate the claims at the center of this lawsuit:  whether ZzzQuil products and diphenhydramine are capable of causing habit formation when used over a prolonged period of time.  *Id.* at 17 n.4 (citing Ginger Skinner, *Can You Get*

*Hooked on Over-the-Counter Sleep Aids*?, Consumer Reports (Dec. 29, 2016), available at https://www.consumerreports.org/drugs/over-the-counter-sleep-aids-can-you-get-hooked/ (last visited March 29, 2024)) ("Consumer Reports Article"). The Consumer Reports Article does not include any citations to clinical studies concerning diphenhydramine and habit formation. Rather, it makes oblique reference to "a 2008 study on rats" that "found that diphenhydramine might be habit-forming" (the article includes no citations, references, or further information about this alleged study). *See* Consumer Reports Article. Nor does the article provide statistics regarding consumers who have become addicted to sleep aids after prolonged use; instead, the article references a single consumer. While the article does quote the "director of the Epilepsy and Sleep Division at Columbia University's Department of Neurology," that quote hardly moves the needle in support of Plaintiffs claims. *Id.* The director merely states that "[Sleep] pills are not 'addictive' in the physical sense . . . but there can certainly be a risk for a psychological dependency." *Id.*

Plaintiffs' response to P&G arguments concerning the lack of scientific studies is that these questions "are not consistent with the district court's limited role on a motion to dismiss, which is to 'test the legal sufficiency of a complaint, not weight the scientific evidence in support of it." ECF No. 28 at 21 (quoting *Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*, 711 F. Supp. 1016, 1019 (E.D. Cal. 1989)). The Court disagrees. Plaintiffs aver that the Challenged Representation leads reasonable consumers to believe that P&G's products will not lead to habitual use. The sources that Plaintiffs cite (or, in this case, fail to cite) to support this claim go straight to the question of whether their claims have facial plausibility. Simply put, Plaintiffs cannot allege that P&G has made false or deceptive statements, then cite materials in support that do not actually demonstrate that ZzzQuil or diphenhydramine can actually lead to habit formation when used over prolonged periods.

Further, the cases Plaintiffs cite to support their position that the Court need not consider the sufficiency of their claims at the motion to dismiss stage are readily distinguishable. In *Sitt v. Nature's Bounty, Inc., No. 15-CV-4199 (MKB)*, 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016), for instance, the plaintiff put forth studies that supported his claims. Accordingly, the *Sitt* court held that "disputes about whether the studies actually prove that black cohosh is ineffective,

or whether there is mere scientific debate regarding the benefits of black cohosh, cannot be resolved by the Court on a motion to dismiss." *Id.* But here, unlike in *Sitt*, Plaintiffs have not included any evidence that plausibly supports their claim. Courts have not hesitated to dismiss claims where evidence does not support the claims that plaintiffs have pled. *See Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *6 (S.D.N.Y. 2022), *aff'd*, 2022 WL 17844403 (2d Cir. 2022) ("Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims."); *see also Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *7 (S.D. Cal. 2012) ("Ultimately, the Court cannot accept that the studies Eckler cites lend 'facial plausibility' to her claims that the Equate representations are false or misleading.").

Therefore, the Court dismisses Counts 1 through 5 of the first amended complaint. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Because the Court believes that Plaintiffs may cure these allegations through amendment, it dismisses Counts 1 through 3 with leave to amend. Counts 4 and 5, brought under New York Law, are dismissed with prejudice.

### G.     Warranty Claims

In addition to state law consumer protection claims, Plaintiffs plead various breach of warranty claims, including breach of express and implied warranty on behalf of a nationwide class, breach of the express and implied warranty under California law, and breach of the express and implied warranty under New York law.

Beginning with Plaintiffs' nationwide claim, the Court agrees with P&G that Plaintiffs' failure to "explicitly identify a particular state's law that applies to the nationwide claims in [C]ount[] 6" is fatal to their claim. *See Moore v. EO Prod., LLC*, No. 22-CV-07618-JST, 2023 WL 6391480, *9 (N.D. Cal. Sept. 29, 2023) (holding that plaintiff's failure "to allege under which state's law he is bringing the breach of express warranty cause of action . . . is grounds for dismissal."). Accordingly, Plaintiffs' nationwide breach of warranty claim is dismissed.

United States District Court
Northern District of California

14

Next, the Court addresses Plaintiffs' breach of express and implied warranty claims under California law. To bring an express warranty claim, a plaintiff must demonstrate that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016). Further, "a description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties. *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893–94 (C.D. Cal. 2013). Because Plaintiffs have not adequately alleged that the non-habit forming representation is false, their express warranty claims must fail. *See McKinnis v. Kellogg USA, No. CV07-2611ABC(RCX)*, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (because "the Froot Loops box contains no misrepresentations that the cereal contains fruit . . . Plaintiffs have failed to allege sufficient facts to make out a claim for breach of an express warranty.").

Plaintiffs also allege that P&G has violated the implied warranty of merchantability. Under California law, the implied warranty can be violated if the products (1) are not "fit for the ordinary purposes for which such goods are used," or (2) do not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314. Plaintiffs' implied warranty claim is not based on whether P&G's products are "fit for the ordinary purpose." *See* ECF No. 28 at 31; ECF No. 23 ¶¶ 134, 142. Rather, Plaintiffs argue that P&G's products do not "conform to the promises or affirmations of fact made on the Products' packaging and labeling." ECF No. 23 ¶ 142. Courts in this district have held that "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017); *cf. DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950 (N.D. Cal. 2023) ( "since the breach of express warranties claim is sufficiently pleaded, the court denies the motion to dismiss the breach of implied warranties claim").

Lastly, because the Court declines to assert pendent jurisdiction over Plaintiff Kouyate's claims, it dismisses the breach of warranty claims brought under New York law.

Accordingly, the Court dismisses all of Plaintiffs' claims for breach of warranty. Plaintiffs' nationwide breach of warranty claim and their claim for breach of warranty under California law are dismissed with leave to amend. Plaintiffs' claim under New York law is dismissed with prejudice.

**H.      Unjust Enrichment Claim**

P&G moves to dismiss Plaintiffs' unjust enrichment claims, which include unjust enrichment on behalf of a nationwide class, under California law, and under New York Law.

For the reasons set forth above, the Court agrees with P&G that Plaintiffs' failure to "explicitly identify a particular state's law that applies to the nationwide claims in [Count] 9" is fatal to their claim. *See Moore*, 2023 WL 6391480 at *9. Similarly, because the Court declines to assert pendent jurisdiction over Plaintiff Kouyate's claims, it dismisses the unjust enrichment claim brought pursuant to New York law.

To plead a cause of action for unjust enrichment, Plaintiffs must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Wood v. Motorola Mobility*, *Inc*., No. C-11-04409-YGR, 2012 WL 892166, at *10 (N.D. Cal. Mar. 14, 2012). However, it is well-established that "[i]f a plaintiff's underlying causes of action fail, a 'claim for unjust enrichment cannot stand alone as an independent claim for relief.'" *Punian v. Gillette Co*., No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) (quoting *Hovsepian v. Apple, Inc*., No. 08-5788 JF (PVT), 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009). Because all of Plaintiffs' other claims have been dismissed, Plaintiffs' unjust enrichment claim under California law also fails.

Accordingly, all of Plaintiffs unjust enrichment claims are dismissed. Only Plaintiffs' nationwide unjust enrichment claim and their claim brought under California law are dismissed with leave to amend.

**I.      Online Advertising Allegations**

Finally, the Court turns to P&G's argument that Plaintiffs lack standing to assert claims

16

based on website statements that they never saw. ECF No. 24 at 35. Plaintiffs respond that Federal Rule of Civil Procedure 12(b)(6) "does not provide a vehicle for such relief." ECF No. 28 at 33. As P&G points out in its reply, "P&G raises this argument under Fed. R. Civ. P. 12(b)(1)." ECF No. 29 at 22.

Article III standing requires Plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Plaintiffs have not alleged that they relied on or saw any of P&G's digital advertisements when purchasing the products. *See* ECF No. 23 ¶¶ 8(c), 9(c), 10(c) (when purchasing the product, Plaintiffs Sneed, Cannon, and Kouyate relied on "the Challenged Representation on the Product's *label or packaging*") (emphasis added). Accordingly, Plaintiffs' alleged injury cannot be deemed fairly traceable to any statements made on P&G's website or social media. *See Hadley*, 243 F. Supp. at 1088 n.1 (dismissing claims where plaintiff failed to allege that he "even visited Defendant's website" because his "alleged injury [was] not 'fairly traceable' to any statements made on Defendant's website."). Therefore, the Court will grant P&G's motion to dismiss allegations based on the contents of P&G's website.

## CONCLUSION

In sum, the Court declines to dismiss Plaintiffs' amended complaint for lack of standing. The Court also declines to find that Plaintiffs are not entitled to equitable or injunctive relief at this juncture, and it concludes that Plaintiffs' claims are not preempted. The Court does, however, agree with P&G that Plaintiff Kouyate's New York law claims can be dismissed for lack of personal jurisdiction. It also agrees with P&G that Plaintiffs have failed to state a claim, as Plaintiffs fail to allege that the "non-habit forming" representation at issue is false or misleading. Finally, the Court finds that Plaintiffs cannot assert claims based on P&G's website.

All of Plaintiffs' claims, with the exception of their claims brought pursuant to New York law, are dismissed with leave to amend. Plaintiffs may file an amended complaint within twenty-

/ / /

/ / /

17

eight days of this order solely to cure the deficiencies identified by this order.  Failure to file a timely amended complaint will result in dismissal of all claims with prejudice.

The case management conference scheduled for August 20, 2024 is continued to November 19, 2024.  An updated joint case management statement is due November 12, 2024.

**IT IS SO ORDERED.**

Dated:  August 19, 2024



JON S. TIGAR
United States District Judge