**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Benjamin J. Fuchs (SBN 320793)
*bfuchs@clarksonlawfirm.com*
Samuel M. Gagnon (*pro hac vice*)
*sgagnon@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN SNEED, NICKOLAS CANNON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Case No. 4:23-cv-05443-JST<br>Complaint Filed: October 23, 2023<br>FAC Filed: January 26, 2024<br><br>*Assigned to Hon. Jon S. Tigar*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Information<br>Date:     January 9, 2025<br>Time:     2:00 PM<br>Location:  Zoom |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

    A.    Defendant's False and Deceptive "Non-Habit Forming" Claim ................................. 3

    B.    The False and Deceptive "Non-Habit Forming" Claim is Material to Consumers' Purchasing Decisions .............................................................................................. 4

    C.    Plaintiffs Relied on Defendant's Deceptive "Non-Habit Forming" Claim ................ 4

III.  LEGAL STANDARD ........................................................................................ 5

IV.   ARGUMENT ..................................................................................................... 5

    A.    Plaintiffs Have Plausibly Alleged the Products are Habit-Forming .......................... 5

        1.    Scientific Evidence and Expert Testimony Support Plaintiffs' Allegations that Diphenhydramine is Habit-Forming ......................................................... 6

            i.    Scientific Sources Show Diphenhydramine is Habit-Forming ............ 6

            ii.   Scientific Evidence of Diphenhydramine Dependency Directly Supports Plaintiffs' Claims ................................................................ 7

            iii.  Statistical Evidence and Studies of Diphenhydramine Overuse and Habitual Use Support Plaintiffs' Claims ............................................. 8

            iv.   Dr. Nemanich's Expert Declaration Reinforces the Plausibility of Plaintiffs' Allegations .......................................................................... 9

        2.    Plaintiffs' Experiences of Habitual Use Further Support Their Claims ........ 10

        3.    The Products' Back Label Does Not Dispel Consumer Deception Caused by the Front "Non-Habit Forming" Label ........................................................ 10

    B.    Defendant's Preemption Argument Fails ................................................................. 11

        1.    The Court Should Reject Defendant's Recycled Preemption Argument Because the Issue Has Been Decided and No Exception to the Law of The Case Doctrine Applies. ............................................................................... 12

        2.    Plaintiffs' Claims Are Still Not Preempted ................................................. 13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

C.      Plaintiffs Adequately Pled that Defendant Committed Breach of Warranty............. 17

D.      Plaintiffs Adequately Pled their Unjust Enrichment Cause of Action....................... 19

V.      CONCLUSION .................................................................................................................. 21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page No.**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................... 5

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .................................................................................. 16

*Baker v. Nestle S.A.*,
  No. 2:18-cv-03097-VAP-PJWx,
  2019 WL 960204 (N.D. Cal. Jan. 3, 2019) ............................................................. 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................... 5

*Burr v. Sherwin Williams Co.*,
  42 Cal. 2d 682 (Cal. 1954) ..................................................................................... 20

*Cabrales v. Castle & Cooke Mortg., LLC*,
  No. 1:14-cv-01138-MCE-JLT,
  2015 WL 3731552 (E.D. Cal. June 10, 2015) ........................................................ 19

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*,
  741 F.3d 1082 (9th Cir. 2014) ................................................................................ 21

*Chavez v. Blue Sky Nat. Beverage Co.*,
  340 F. App'x 359 (9th Cir. 2009) .............................................................................. 5

*Clemens v. DaimlerChrysler Corp.*,
  530 F.3d 852 (9th Cir. 2008) .................................................................................. 20

*Deras v. Volkswagen Grp. of Am., Inc.*,
  No. 17-cv-05452-JST,
  2018 WL 2267448 (N.D. Cal. May 17, 2018) .................................................... 19, 20

*Epstein v. Wash. Energy Co*,
  83 F.3d 1136 (9th Cir. 1996) ........................................................................... 5, 6, 10

*Flowers v. Doctor's Best, Inc.*,
  No. CV 13-08174 DMG (JCGx),
  2015 WL 13919159 (C.D. Cal. Mar. 31, 2015) ........................................................ 7

*Gerlinger v. Amazon.com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) .................................................................... 19

*Gerstle v. Am. Honda Motor Co.*,
  No. 16-cv-04384-JST,
  2017 WL 2797810 (N.D. Cal. June 28, 2017)......................................................... 20

*Horti v. Nestlé HealthCare Nutrition, Inc.*,
  No. 22-16832,
  2023 WL 8613601 (9th Cir. Dec. 13, 2023)........................................................ 8, 10

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*In re Cal. Bail Bond Antitrust Litig.*,
No. 19-cv-00717-JST,
2022 WL 19975276 (N.D. Cal. 2022) ...............................................................................11, 12, 13

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ............................................................................... 9

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018) ............................................................................... 18

*Johnson-Jack v. Health-Ade LLC*,
587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................................................................... 7

*Kutza v. Williams-Sonoma, Inc.*,
No. 18-cv-03534-RS,
2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ...............................................................8, 10

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ...............................................................................5, 14

*Liberty Mutual Ins. Co. v. EEOC*,
691 F.2d 438 (9th Cir. 1982) ............................................................................... 12

*Long Nguyen v. Lotus by Johnny Dung Inc.*,
No. SACV 17-1317 JVS (JDEx),
2019 WL 1957962 (C.D. Cal. Jan. 7, 2019) ............................................................................... 8

*Loskot v. Super Star, Ltd. Liab. Co.*,
No. C 06-7199 CW,
2007 WL 1703645 (N.D. Cal. June 12, 2007) ............................................................................... 10

*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*,
235 F.3d 443 (9th Cir. 2000) ............................................................................... 12

*McIntyre v. Am. Honda Motor Co.*,
No. 2:23-cv-7024-SPG-BFM,
2024 WL 3324622 (C.D. Cal. July 3, 2024) ............................................................................... 10

*Morgan v. Albertsons Companies, Inc.*,
No. 22-cv-02948-JST,
2023 WL 3607275 (N.D. Cal. Mar. 13, 2023) ...............................................................16, 17

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................................... 21

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
691 F. Supp. 3d 1113 (N.D. Cal. 2023) ............................................................................... 8

*Nishimoto v. Cty. of San Diego*,
No. 3:16-cv-01974-BEN-JMA,
2017 WL 2709742 (S.D. Cal. June 20, 2017) ...............................................................5, 6

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................................... 19

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Seale v. GSK Consumer Health, Inc.*,
  No. 2:23-cv-00842-AB-MRWx,
  2024 WL 1040854 (C.D. Cal. Feb. 27, 2024) .................................................................. 16

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................................................................ 10

*Stephens v. Target Corp.*,
  No. 22-CV-1576 (PJS/DTS),
  2023 WL 6218060 (D. Minn. Sept. 25, 2023) ................................................................. 16

*Stewart v. Kodiak Cakes, LLC*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021) ........................................................................... 20

*Strumlauf v. Starbucks Corp.*,
  192 F. Supp. 3d 1025 (N.D. Cal. 2016) ........................................................................... 20

*Sue Shin v. Sanyo Foods Corp. of Am.*,
  No. 2:23-cv-10485-SVW-MRW,
  2024 WL 4467603 (C.D. Cal. Aug. 13, 2024) ................................................................. 21

*U.S. v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) .......................................................................................... 12

*United States v. Cuddy*,
  147 F.3d 1111 (9th Cir. 1998) ........................................................................................ 12

*Vance v. Church & Dwight Co.*,
  No. 2:22-cv-00044-MCE-KJN,
  2023 WL 2696826 (E.D. Cal. Mar. 29, 2023) ............................................................. 8, 10

*Vasic v. Patent Health, LLC*,
  No. 13cv849 AJB (MDD),
  2014 WL 940323 (S.D. Cal. Mar. 10, 2014) ................................................................. 5, 6

*Vigil v. Gen. Nutrition Corp.*,
  No. 15-cv-0079 JM (DBH),
  2015 WL 2338982 (S.D. Cal. May 13, 2015) ................................................................... 8

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024) ....................................................................................... 8, 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................... 5, 8, 11

*Wyeth v. Levine*,
  129 S. Ct. 1187 (2009) ................................................................................................... 17

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ....................................................................................................... 16

**Statutes**

Fed. R. Civ. P. 8(d)(2) .................................................................................................... 19

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Fed. R. Civ. P. 8(d)(3) ................................................................................................ 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 5, 14

**Regulations**

21 C.F.R. § 338.50 .................................................................................................... 16

40 Fed. Reg. at 57,296 ............................................................................................. 14

40 Fed. Reg. at 57,297 ..................................................................................... 2, 14, 15

40 Fed. Reg. at 57,303 ................................................................................ 2 ,3, 14, 15

43 Fed. Reg. at 25,544 ............................................................................................... 3

43 Fed. Reg. at 25,578 ................................................................................ 2, 3, 14, 15

43 Fed. Reg. at 25,579 ......................................................................................... 13, 14

54 Fed. Reg. at 6,814 ........................................................................................... 14, 15

54 Fed. Reg. at 6,815 ............................................................................................... 13

54 Fed. Reg. at 6,819 ............................................................................................... 13

**Other Authorities**

Bonham & Birkmayer, *Severe Diphenhydramine Dependence*
   5 J. Dual Diagnosis 97, 101-102 ........................................................................... 7

Civ. L.R. 7-9 ........................................................................................................... 12

*Cocaine-Like Neurochemical Effects of Antihistaminic Medications*
   106 J. Neurochem 147 (Jul. 1, 2008) ............................................................... 3, 18

Craig & Mellor, *Dimenhydrinate dependence and withdrawal*
   142 Can. Med. Assoc. J. 970, 970 .......................................................................... 7

Jagroop S. Saran, et al., *Chronic diphenhydramine abuse and withdrawal*
   7 Neurology: Clinical Practice 439, 439 (Oct. 2017) ........................................... 7

*Risk of Abuse of Diphenhydramine in Children and Adolescents with Chronic Illnesses*
   133 J. Pediatrics 293-295 (Aug. 1998) ............................................................... 18

Roussin et al., *Misuse and Dependence*
   8 PLOS ONE 1 (2013) ........................................................................................... 7

Schweitzer et al., *Sleepiness and Performance*
   94 J. Allergy Clinical Immunology 716, 722 ....................................................... 7

*Tolerance to Daytime Sedative Effects of H1 Antihistamines*
   22 J. Clin. Pharm. 511-515 (Oct. 2022) .............................................................. 18

Case No. 4:23-cv-05443-JST               -vi-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant prominently labels its ZzzQuil Sleep Aid Products as "Non-Habit Forming." Other major competitors in the sleep aid market do not make this bold claim. That is because sleep aids like ZzzQuil contain diphenhydramine HCl ("diphenhydramine"), a substance widely recognized by the scientific community as habit-forming.

Despite the science, Defendant persists in its false advertising. This deceives consumers like Mr. Sneed and Mr. Cannon who paid for a sleep aid that purportedly was not habit-forming, only to later learn it was when they unexpectedly fell into habitual use. Because other major sleep aid companies do not make this false claim, Defendant also continues to enjoy an unfair competitive advantage over those in the market telling the truth. This putative class action seeks to right both of those wrongs, under established consumer protection laws.

In its prior order, the Court rejected Defendant's challenges as to standing, preemption, and more. ECF 45. But it also concluded Plaintiffs had not met their pleading burden as to falsity of the non-habit-forming claim, including because Plaintiffs did not identify specifically one of the primary scientific studies on which they relied. But the Court granted leave to amend, stating "the Court believes that Plaintiffs may cure these allegations[.]" *Id*. at 14. In the second amended complaint ("SAC"), they have.

The SAC now includes specific reference to, and discussion of, the peer reviewed scientific study that Plaintiffs did not sufficiently identify before, and many others, which all illustrate the habit-forming effects of diphenhydramine. The SAC also contains new findings as to habit formation from several other additional peer-reviewed studies, together with a new fact basis on which the Court can reasonably conclude that studies as to habit formation in rats can be extrapolated to humans under accepted and common scientific principles. Finally, the SAC also contains a declaration from Dr. Antonia Nemanich, a respected expert in medical toxicology and substance dependence, attesting to the habit-forming nature of diphenhydramine, in line with the supporting scientific studies and her clinical experience.

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant's primary response to the robust new allegations is to introduce its own view of the science, inviting the Court to weigh scientific evidence Defendant believes can overcome the contrary consensus detailed in the SAC. But on a motion to dismiss, the Court should decline that invitation as procedurally improper.

Defendant's other main tactic is to recycle arguments already rejected by this Court. First, it reiterates its view that "non-habit forming" is true, if (and apparently only if) consumers follow a back label that says to stop using the product after two weeks, but that does not say a word about the risk of habit formation Defendant falsely promises cannot occur on the front label. Plus, as the Court already explained, a back-label instruction directing a user simply to "stop" means nothing once a consumer finds themselves unable to. If anything, Defendant's recycled argument is worse now, given the additional factual allegations supporting that tolerance leading to habit formation can occur in as little as four days.

Second, despite the Court's thorough examination of preemption, Defendant also raises that issue again. But it fatally overlooks law of the case, while also relying on 'facts' outside the pleadings that fail in any event to establish the FDA has revisited much less reversed its finding that "non-habit-forming" in marketing sleep aids is "misleading, undesirable and probably false because it is very hard to prove that any product with psychotropic activity can be non-habit-forming." 40 Fed. Reg. at 57,297, 57,303 (proposed monograph); 43 Fed. Reg. at 25,578 (tentative final monograph).

Defendant's new arguments also fail, as to breach of warranty, and otherwise. The additional scientific evidence resolves the Court's concerns as to the falsity of the non-habit forming warranty, and Plaintiffs narrowed the claim to California law to address the scope defect the Court identified. The rest of Defendant's challenge rests on a selective misreading of the monetary relief Plaintiffs seek on behalf of all misled consumers, and Plaintiffs' claim for unjust enrichment is also properly pled in the alternative.

For all of these reasons, the SAC eliminates any basis on which Defendant can escape answering for a materially false 'non-habit forming' promise that its honest competitors do not make

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

given the scientific evidence that diphenhydramine is in fact habit-forming. Its motion should therefore be denied.

## II.    FACTUAL BACKGROUND

### A.    Defendant's False and Deceptive "Non-Habit Forming" Claim

Defendant's ZzzQuil Sleep Aid Products ("Products") contain diphenhydramine, a drug widely recognized in scientific studies—including multiple studies now cited and detailed through Plaintiffs' SAC—as having significant habit-forming properties. See, e.g., ECF 47 ¶ 15 (citing 2008 study *Cocaine-Like Neurochemical Effects of Antihistaminic Medications*) (106 J. Neurochem 147 (Jul. 1, 2008); *see also id*. ¶ 28, n. 33 (citing 2021 study *Increased rates of diphenhydramine overdose, abuse, and misuse in the United States, 2005–2016* (59 Clinical Toxicology 1 (Mar. 10, 2021)). In the 2008 study (ECF 47 ¶¶ 15-16), for example, researchers found that diphenhydramine elicited a dopamine response in rats—commonly used as test subjects for human brain studies—similar to that of cocaine. The scientific community acknowledges diphenhydramine as a drug prone to abuse and tolerance development. Declaration of Antonia Nemanich, MD ("Nemanich Decl."), ECF 47-5 ¶¶ 7-9. Tolerance to its sedative effects can develop rapidly, with one study showing it occurs within four days. *Id*. ¶ 9.

Consumers often begin using diphenhydramine-based sleep aids as directed but escalate to excessive doses due to its habit-forming and tolerance-building properties. ECF 47-5 ¶ 8. Diphenhydramine's relaxing, sedative effects also encourage habitual use even without physical addiction. ECF 47 ¶ 6. Abuse is widespread: a study reported a 63% increase in intentional diphenhydramine exposures from 2005 to 2016, including a 230% rise in misuse among adults aged 55 and older. *Id*. ¶ 29. Sleep aids like Defendant's Products are especially prone to habit formation, as they are used as part of bedtime routines—a behavior known to reinforce habits. *Id*. ¶ 26.

Despite extensive research and repeated FDA warnings that labeling diphenhydramine-based sleep aids as "Non-Habit Forming" is misleading, Defendant markets its Products with this claim. *See* 40 Fed. Reg. at 57,303; 43 Fed. Reg. 25,544, at 25,578-79. The FDA has explicitly stated that the phrase "non-habit-forming" is "misleading, undesirable and probably false," given the difficulty in proving that psychotropic substances lack habit-forming potential. *Id*. The SAC

includes sleep-aid companies selling similar products, containing diphenhydramine, who therefore refrain from making this misleading claim. ECF 47 ¶ 19.

### B.    The False and Deceptive "Non-Habit Forming" Claim is Material to Consumers' Purchasing Decisions

Proper sleep is vital to overall health, yet more than one-third of American adults consistently fail to get enough rest. ECF 47 ¶ 13. This widespread sleep deficiency poses serious health risks, including depression, ADHD, obesity, Type 2 diabetes, cardiovascular disease, cancer, and Alzheimer's. *Id*. To combat these dangers, many consumers turn to sleep aids in pursuit of restful sleep. *Id*. However, sleep aids are not just a short-term solution, as 41 percent of over-the-counter sleep aid users report using them for a year or longer. *Id*. ¶ 14.

Consumers desire sleep aid products that are safe and are devoid of significant side effects—such as habit formation. ECF 47 ¶ 17. Knowing this, Defendant markets its ZzzQuil sleep aid products as "Non-Habit Forming" by including the claim prominently on the front labels of the Products. *Id.* ¶ 18. Reasonable consumers highly value the "Non-Habit Forming" claim, and it misleads them into purchasing the Products under the false belief that they are free from the risk of habit formation, a key factor in their decision-making. *Id*. ¶¶ 9, 10, 40.

### C.    Plaintiffs Relied on Defendant's Deceptive "Non-Habit Forming" Claim

Reasonable consumers, including Plaintiffs, are misled by the "Non-Habit Forming" claim into believing the Products provide safe, effective sleep benefits without the risk of habit formation, misleading them to pay premium prices under false pretenses. ECF 47 ¶¶ 37-43. Plaintiffs Sneed and Cannon relied on Defendant's "Non-Habit Forming" claim, reasonably believing the Products would not lead to habitual use, yet both developed a habit of using them. *Id*. ¶¶ 9-10. Plaintiffs therefore received Products that did not deliver advertised benefits, and they each suffered a concrete economic injury because of Defendant's actions. *Id*. ¶¶ 9-10, 37-43. Plaintiffs would not have purchased the Products, or would have paid less for them, had they known the truth about their habit-forming properties. *Id*. ¶ 45.

//

//

Case No. 4:23-cv-05443-JST                    -4-
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

### III.  LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a complaint must convey "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]llegations of material fact [must be] taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

### IV.  ARGUMENT

#### A.  Plaintiffs Have Plausibly Alleged the Products are Habit-Forming

Under the well-established "reasonable consumer" standard, courts assess whether advertising claims are misleading by determining if it is plausible that members of the public are likely to be deceived. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs need only allege plausible facts that, if taken as true, support a valid claim for relief. *Twombly*, 550 U.S. 544, 556-57 (2007).

Defendant's motion disregards this pleading standard, prematurely raising fact disputes inappropriate for resolution now. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (Rule 12(b)(6) review is limited to the complaint, with allegations taken as true and construed in the plaintiff's favor, while factual challenges are irrelevant to legal sufficiency). The scientific and other evidence is not weighed on a motion to dismiss, and Plaintiffs need not prove the truth of the studies on which they rely. *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, 360 (9th Cir. 2009); *Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (scientific support for ad claims is factual question for later); *Nishimoto v. Cnty. Of San Diego*, 2017 WL 2709742, at *5 (S.D. Cal. June 20, 2017). What matters now is whether Plaintiffs' view that "Non-Habit Forming" is false is plausibly alleged in the SAC, assuming the truth of the allegations. With multiple new peer-reviewed studies and the supporting expert declaration of Dr. Nemanich, it is. *See* ECF 47 ¶¶ 15-36, 42; ECF 47-5, *passim*.

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**1.    Scientific Evidence and Expert Testimony Support Plaintiffs' Allegations that Diphenhydramine is Habit-Forming**

In response to the Court's concerns (ECF 45 at 12-13), Plaintiffs strengthened their allegations with additional scientific studies and an expert declaration confirming diphenhydramine is habit-forming, rendering Defendant's "Non-Habit Forming" promise false. Defendant's critiques about whether the studies address "use as directed" are no basis on which to disregard their probative value at the motion to dismiss stage. *See Vasic v. Patent Health, LLC*, 2014 WL 940323, at \*4 (S.D. Cal. Mar. 10, 2014) (whether studies in fact prove falsity is a fact question inappropriate for resolution on a motion to dismiss); *Nishimoto*, 2017 WL 2709742, at \*5; *Epstein*, 83 F.3d at 1140 (plaintiffs need only present plausible, fact-supported allegations at this stage). Plaintiffs' fact allegations establish the plausibility of their claims, and Defendant's attempt to disprove those facts on a motion to dismiss is misplaced.

**i.    Scientific Sources Show Diphenhydramine is Habit-Forming**

Contrary to Defendant's assertions, Plaintiffs' studies directly establish diphenhydramine's habit-forming properties. Plaintiffs now explicitly cite the 2008 study *Cocaine-Like Neurochemical Effects of Antihistaminic Medications*, which the Court previously noted should have been directly referenced. *See* ECF 47 ¶ 15; ECF 45 at 12-13. The study demonstrates that diphenhydramine elicits a cocaine-like dopamine response in rodent models. Additional studies validate rodent models in medical research (*Bryda, The Mighty Mouse*, 2013, ECF 47 ¶ 16) and demonstrate that regular diphenhydramine use builds tolerance (*Richardson, Tolerance to Sedative Effects of H1 Antihistamines*, 2022, ECF 47 ¶ 32 n.42), leads to increased consumption (*Dinndorf, Risk of Diphenhydramine Abuse in Children*, 1998, ECF 47 ¶ 34 n.44), and risks misuse (*Saran, Chronic Diphenhydramine Abuse*, 2017, ECF 47 ¶ 29 n.34). Dr. Nemanich also explains that rodent studies provide a credible basis for understanding diphenhydramine's habit-forming nature in humans, consistent with her findings. ECF 47-5 ¶¶ 10, 12.

Defendant also overlooks the relevance of a 2014 study on how habitual drug behaviors form (ECF 47 ¶ 27 n.30-31), despite its relevance to Plaintiffs' claims. Further, a 2013 study recognizes diphenhydramine's potential for abuse and dependence, noting, "cases of antihistamine

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

abuse and dependence, especially diphenhydramine and dimenhydrinate, have been described." *Roussin, Misuse and Dependence on Sedative H1 Antihistamines*, 2013 (cited in ECF 47 ¶ 29, n.39).

Plaintiffs' robust evidence, including peer-reviewed studies and expert testimony, strongly supports their claims that diphenhydramine, the active ingredient in Defendant's Products, is habit-forming. Defendant's attempts to discredit these sources are thus unavailing.

### ii. *Scientific Evidence of Diphenhydramine Dependency Directly Supports Plaintiffs' Claims*

Plaintiffs have further bolstered their plausible claims with peer-reviewed scientific articles that document medical professionals' observations of patients developing chronic abuse and dependency on diphenhydramine. For example, Plaintiffs now cite to two studies reflecting that use of diphenhydramine creates a risk of misusing the products containing the ingredient stemming from regular consumers' rapid development of a tolerance to diphenhydramine and an onslaught of withdrawal symptoms that worsen with prolonged use. ECF 47 ¶ 29, n. 34, 35 (citing Jagroop S. Saran, et al., *Chronic diphenhydramine abuse and withdrawal*, 7 Neurology: Clinical Practice 439, 439 (Oct. 2017); Craig & Mellor, *Dimenhydrinate dependence and withdrawal*, 142 Can. Med. Assoc. J. 970, 970).

Plaintiffs also extensively cite to the 2008 Tanda study, *Cocaine-Like Neurochemical Effects of Antihistaminic Medications*, previously highlighted by the Court, which demonstrates that diphenhydramine promotes dopamine transmission at levels comparable to cocaine, indicating habit-forming properties. *See* ECF 47 ¶ 15, n. 12-15. Additional studies cited in the SAC confirm that frequent diphenhydramine users struggle to stop without withdrawal symptoms. *Id*. ¶ 29, n. 38 (*Schweitzer et al., Sleepiness and Performance*, 94 J. Allergy Clinical Immunology 716, 722); *id.* (*Roussin et al., Misuse and Dependence*, 8 PLOS ONE 1 (2013)); *id.* (*Bonham & Birkmayer, Severe Diphenhydramine Dependence*, 5 J. Dual Diagnosis 97, 101-102).

Defendant invites the Court to disregard these studies as "anecdotal evidence," but studies published in reputable scientific journals are not "anecdotal" and instead carry significant evidentiary weight. *See Flowers v. Doctor's Best, Inc.*, 2015 WL 13919159, at *6 (C.D. Cal. Mar. 31, 2015); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 970 (N.D. Cal. 2022). Even so,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant overlooks that falsity can be established through testing, scientific literature, or anecdotal evidence. *See Long Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 1957962, at *6 (C.D. Cal. Jan. 7, 2019); *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1120 (N.D. Cal. 2023); *Vance v. Church & Dwight Co.*, 2023 WL 2696826, at *4 (E.D. Cal. Mar. 29, 2023). Additionally, where brand-specific studies are unavailable, Courts credit at the pleading stage studies evaluating similar products or focused on the particular ingredient at issue.  *See Long Nguyen*, 2019 WL 1957962, at *6 (quoting *Vigil v. Gen. Nutrition Corp.*, 2015 WL 2338982, at *14 (S.D. Cal. May 13, 2015)). All of the studies on which Plaintiffs rely therefore properly support that diphenhydramine creates a tolerance effect leading to abuse and dependence, directly at odds with the Products' "Non-Habit Forming" label. *See* ECF 47 ¶ 29, n. 34, 39; ¶ 32, n. 42; ¶ 34, n. 44.

> ### iii.  Statistical Evidence and Studies of Diphenhydramine Overuse and Habitual Use Support Plaintiffs' Claims

The statistical data and studies cited in the SAC strongly support Plaintiffs' claims that the Products lead to habitual use. The SAC highlights evidence showing a "63 percent increase in intentional exposure to diphenhydramine" from 2005 to 2016, with adults over 55 experiencing a staggering "230% increase in rates of diphenhydramine misuse." *See* ECF 47 ¶ 29. These alarming statistics underscore the widespread issue of diphenhydramine abuse, directly bolstering Plaintiffs' allegations that the Products are habit-forming. Defendant's argument that these statistics purportedly fail to show habit formation "when used as directed" constitutes an improper counter-assertion (*Horti v. Nestlé HealthCare Nutrition, Inc.*, 2023 WL 8613601, at *1 (9th Cir. Dec. 13, 2023); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018)), contradicts Ninth Circuit precedent on back-label disclosures (*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024); *Williams*, 552 F.3d 934, 939), and ignores the Court's previous determination that the back-label directions here do not mitigate the alleged falsity of the front-label's "Non-Habit Forming" promise (ECF 45 at 7-8).

Studies on excessive dosing further reinforce Plaintiffs' claims. The SAC cites multiple sources demonstrating that habitual use develops as users build a tolerance, leading to escalating dosages to achieve the same effects. *See* ECF 47 ¶¶ 15, 29-36; ECF 47-5 ¶¶ 7-9. Contrary to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant's narrative, Plaintiffs specifically allege that consumers often begin using diphenhydramine as directed but escalate their dosages due to the drug's effects—not by choice. *See* ECF 47-5 ¶ 8. This evidence directly challenges Defendant's argument and underscores diphenhydramine's inherent habit-forming properties. Dr. Nemanich further confirms that "diphenhydramine is habit-forming with regular use." *See* ECF 47-5 ¶ 12. Together, the statistical data and studies amply support the habit-forming nature of diphenhydramine.

> iv.     *Dr. Nemanich's Expert Declaration Reinforces the Plausibility of Plaintiffs' Allegations*

Dr. Nemanich's declaration provides additional scientific support for Plaintiffs' allegations that the Products are habit-forming. *See In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011) (finding expert declaration used as supporting evidence for complaint buttressed plaintiffs' claims). Dr. Nemanich explains that, as a medical toxicologist, she has personally treated patients who meet DSM-V criteria for dependence and use disorder linked to diphenhydramine. ECF 47 ¶ 34; ECF 47-5 ¶ 11. She notes that most patients initially took the drug as directed for insomnia but escalated their doses due to tolerance, rendering the recommended doses ineffective. This progression often led to significant difficulty stopping the medication. *Id*.

Dr. Nemanich specifically addresses the habit-forming nature of diphenhydramine, the active ingredient in the Products, stating that tolerance can develop in as little as four days. ECF 47 ¶ 33; ECF 47-5 ¶ 9. She highlights how patients following directed dosages frequently escalate to excessive levels, resulting in dependency and withdrawal symptoms. ECF 47 ¶¶ 32, 34; ECF 47-5 ¶ 8. Based on her clinical observations and case reports, she concludes, "[a]ny substance with this level of misuse potential clearly possesses the characteristics to be habit-forming." ECF 47-5 ¶ 8; ECF 47 ¶ 36. Dr. Nemanich's expert opinion directly supports Plaintiffs' claims, affirming that diphenhydramine is habit-forming, even when initially used as directed. ECF 47 ¶ 36; ECF 47-5 ¶ 8. Her findings strengthen Plaintiffs' position that the Products present a habit-forming risk that consumers are entitled to know about.

//

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**2.    *Plaintiffs' Experiences of Habitual Use Further Support Their Claims***

Defendant's attempt to discredit Plaintiffs' allegations of habit formation is fundamentally flawed. Plaintiffs specifically allege incorporating the Products into their bedtime routines to fall asleep, establishing habitual use. ECF 47 ¶¶ 9-10. Courts consistently hold that such anecdotal evidence from named plaintiffs is sufficient to state a claim. *See Vance*, 2023 WL 2696826, at *4 (plaintiff's account of cold medicine failing to meet label claims sufficient to allege falsity). Defendant's counter-assertion—that Plaintiffs' habit claims are invalid because they did not allege making multiple purchases—is likewise baseless and premature. *See Epstein*, 83 F.3d 1136, 1140 (allegations at pleadings stage to be accepted as true and viewed in light most favorable to plaintiffs); *see also McIntyre v. Am. Honda Motor Co.*, 2024 WL 3324622, at *13 (C.D. Cal. July 3, 2024) ("Credibility determinations are not appropriate at the motion to dismiss stage."); *see also Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (plaintiff's explanation need only be plausible, not probable); *Loskot v. Super Star, Ltd. Liab. Co.*, 2007 WL 1703645, at *3 (N.D. Cal. June 12, 2007) ("At the pleading stage in this case, however, the Court cannot evaluate Plaintiff's credibility. . .").

**3.    *The Products' Back Label Does Not Dispel Consumer Deception Caused by the Front "Non-Habit Forming" Label***

Defendant's argument that Plaintiffs must prove the Products are habit-forming "when used as directed" misrepresents Plaintiffs' allegations and fails for multiple reasons. *See* ECF 52 at 12.

First, Plaintiffs allege that the Products are habit-forming regardless of back-label instructions, a claim Defendant improperly seeks to reframe. Courts consistently hold that complaints must be accepted as true at this stage, and dismissal based on counterarguments or alternative interpretations is improper. *See Horti*, 2023 WL 8613601, at *1 (label disagreements not appropriate for resolution at motion-to-dismiss stage); *Kutza*, 2018 WL 5886611, at *4 (plausible claims about misleading labels cannot be dismissed). When competing plausible explanations exist, the complaint must survive. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Second, Defendant's reliance on back-label disclosures fails under Ninth Circuit law. Misleading front-label claims cannot be cured by back-label clarifications. In *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024), the court held that consumers are not expected to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

seek clarification on back labels when front-label claims are deceptive. Similarly, in *Williams*, the Ninth Circuit ruled that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print." 552 F.3d 934, 939. Plaintiffs plausibly allege that "Non-Habit Forming" is unambiguously deceptive. Reasonable consumers interpret it to mean the Products cannot lead to habit formation—because that is what it says. *See* ECF 47 ¶¶ 20-21.

Third, even if reasonable consumers did read the back-label disclosure, it fails to warn of habit formation. The cited language—"Stop use and ask a doctor if sleeplessness persists continuously for more than 2 weeks. Insomnia may be a symptom of serious underlying medical illness"—does not address the risk of habitual use. *See* ECF 47, Ex. 1-4C. At most, it advises consumers that the Product may be ineffective, not that it poses a risk of dependency. Thus, the back-label disclosure does nothing to mitigate the misleading "Non-Habit Forming" representation on the front.

Lastly, the Court has already recognized the weakness of Defendant's argument. In its prior ruling, the Court stated, "Plaintiffs have the better argument," and acknowledged that back-label directions to discontinue use after two weeks are irrelevant if habit formation occurs sooner. *See* ECF 45 at 11-12. Plaintiffs allege that habit formation can occur in less than two weeks, as Dr. Nemanich explains that tolerance to diphenhydramine can develop in as little as four days. *See* ECF 47 ¶ 33; ECF 47-5 ¶ 9.

## B.    Defendant's Preemption Argument Fails

Despite the Court's earlier ruling on preemption, Defendant persists in claiming the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. Section 379r(a) ("FDCA"), preempts any state law that would bar it from labeling the Products as "Non-Habit Forming." ECF 52 at 20-25. The Court should decline to revisit this argument because, unlike *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *8 (N.D. Cal. 2022), which Defendant heavily cites, no changed circumstances—or any other factors—exist to support an exception to the law of the case doctrine. Even if Defendant could establish "changed circumstances," its preemption challenge fails for the same reasons as before.

### 1.      The Court Should Reject Defendant's Recycled Preemption Argument Because the Issue Has Been Decided and No Exception to the Law of The Case Doctrine Applies.

The Court should not reconsider Defendant's preemption argument. Regardless of Defendant's claimed compliance with Local Rule 7-9, the law of the case doctrine precludes revisiting this issue where, as here, no changed circumstances or other exceptions to the doctrine are present.

Defendant contends that its revisited preemption defense is proper because, as "a new motion addressing a newly filed complaint" rather than a motion for reconsideration, it complies with the procedural requirements of Civil Local Rule 7-9. ECF 52 at 21, n. 20 (citing *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *8). But Defendant overlooks that law of the case applies regardless of compliance with local rules. According to the law of the case doctrine, issues previously decided cannot be re-raised in a motion to dismiss an amended complaint unless one of five exceptions applies: (a) the first decision was clearly erroneous; (b) an intervening change in the law has occurred; (c) the evidence on remand is substantially different; (d) other changed circumstances exist; or (e) a manifest injustice would otherwise result. *See Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (citing *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982) (doctrine applies when issue was decided "explicitly or by necessary implication" in previous disposition of same or higher court in identical case); *see also United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (citing *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)) (detailing exceptions).

None of these exceptions apply here—the Court's prior ruling on preemption was not clearly erroneous; Plaintiffs are not aware of any intervening changes in the law; this case is not before the Court on remand, nor is any evidence before the Court now substantially different than the evidence the Court reviewed prior to its August 19, 2024 Order; no relevant circumstances have changed; and no injustice would occur should the Court decline to again consider Defendant's preemption challenge. To the extent Defendant may on reply attempt to improperly introduce a new argument contending that Plaintiffs' filing of their SAC established "changed circumstances" of some kind,

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

the facts of the very case upon which Defendant primarily relies illustrate why that exception would not apply here. In *In re Cal. Bail Bond Antitrust Litig.*, the Court found that the "changed circumstances" exception to the law of the case doctrine applied to its consideration of a previously decided immunity defense argument because the amended complaint at hand raised "new factual allegations" that "altered" the factual narrative in play during the Court's prior analysis of the issue. *In re Cal. Bail Bond Antitrust Litig.*, *supra*, at *8, n. 3. Such is not the case here, as Plaintiffs through their SAC bolstered their showing of the habit-forming nature of Defendant's Products (ECF 47 ¶¶ 22-36) and narrowed the scope of their causes of action (ECF 47 ¶¶ 59-137). Neither act "altered" the core of the factual allegations or narrative the Court previously considered. The theory of the case is exactly the same. The Court should therefore decline to revisit Defendant's preemption argument.

### 2. Plaintiffs' Claims Are Still Not Preempted

In addition to being barred by the law of the case doctrine, Defendant's preemption argument fails in any event, once again, for the same reasons detailed in the Court's prior ruling. ECF 45 at 7-8. Defendant purports to expand upon its prior failed preemption argument by breaking it into three categories, but they all amount to the same primary argument the Court already rejected when it held that Plaintiffs' state-law claims are not preempted under 21 U.S.C. Section 379r. *See* ECF 45 at 7-8.

Defendant argues the Court committed critical oversights in its prior ruling. Specifically, Defendant contends that "[a]fter years of additional studies" following the FDA's June 13, 1978 promulgation of its tentative final monograph (43 Fed. Reg. at 25,579), the FDA found that "additional data ha[d] been submitted to the OTC drug review to support the safety and effectiveness of diphenhydramine," and that the agency had "evaluated the results of clinical studies that support the safety and effectiveness of [diphenhydramine] for nighttime sleep-aid use." ECF 52 at 23 (citing 54 Fed. Reg. at 6,815, 6,819). Defendant again argues that in merely approving the use of over-the-counter sleep aids containing diphenhydramine at that point, the FDA implicitly concluded that such usage was not habit-forming because it had commented in its proposed monograph 14 years prior that nighttime sleep aids writ large "should not be habit-forming or addicting." ECF 52 at 23 (citing

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

40 Fed. Reg. at 57,296).

As an initial matter, Defendant goes far beyond the Rule 12(b)(6) analysis standard, prematurely challenging the *veracity* of Plaintiffs' allegations that Defendant's Products, like other over-the-counter sleep aids containing diphenhydramine (which do *not* promise non-habit-forming), are in fact habit-forming. *See* Plaintiffs' Objection to Request for Judicial Notice ("Obj. to RJN"), at 3-4; *see also Lee*, 250 F.3d at 688 (Rule 12(b)(6) motion review "is limited to the complaint," and "[f]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)"). Defendant's improper reliance on this proposed recommendation is in any event unpersuasive: In both the very same proposed monograph *and* its subsequent tentative final monograph, the FDA concluded that the use of "non-habit-forming" in marketing over-the-counter sleep aids "is misleading, undesirable and probably false because it is very hard to prove that any product with psychotropic activity can be non-habit-forming." 40 Fed. Reg. at 57,297, 57,303 (proposed monograph); 43 Fed. Reg. at 25,578 (tentative final monograph). Nothing in the subsequent record, including the FDA's final monograph, nor in the other publications Defendant cites, supports that the FDA even reconsidered—let alone "reversed course" on—its assessment in the proposed and tentative final monographs that marketing products such as Defendant's as "non-habit-forming" was "misleading." Far from showing an "extensive regulatory history repeatedly finding diphenhydramine to be non-habit forming and approving marketing the medicine as such" (ECF 52 at 21), the sources Defendant cites actually reflect that, as the Court earlier found, the FDA's consideration of the phrase "non-habit-forming" was limited to its conclusion in the tentative final monograph that the phrase was misleading. *See* ECF 45 at 8 (citing 43 Fed. Reg. at 25,579 (tentative final monograph)); *see also* 54 Fed. Reg. at 6,814 (final monograph, lacking any reference to claim).

Defendant next argues that the FDA's approval of labeling promoting two other diphenhydramine-containing products—not even sleep aids but cough medicine—as "not habit forming" in 1986 and 1987, respectively—i.e., several years after the agency promulgated its tentative final monograph specific to sleep aids (43 Fed. Reg. at 25,579)—purportedly shows that "the FDA had by that time reversed its tentative view" that "such language may be misleading."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

ECF 52 at 24; ECF 53-2; ECF 53-4. Defendant's argument goes beyond claiming preemption based on FDA regulation of the "non-habit-forming" label for sleep aids containing diphenhydramine, such as its Products. Instead, Defendant improperly attempts to prematurely challenge the factual validity of Plaintiffs' allegation that these sleep aids are habit-forming. *See* Obj. to RJN at 3-4. Even worse, Defendant's argument has a fundamental flaw; it depends on two entirely different products: both cough syrups, which are meaningfully different from sleep aids, including because they are intended for infrequent use only when someone has a cough. Sleep aids relate to a daily occurrence, sleep, they are intended for more regular use than a sporadic need for a cough remedy, and they have other properties different from cough syrup. The reference to cough syrups' higher allowable daily dosages of diphenhydramine, as compared to Defendant's Products, is also irrelevant to preemption.  Logically, if the FDA's approval of two wholly different product labels, in a different category of products, did in fact show that the agency "had by that time reversed its tentative view" (as articulated through its 1975 proposed monograph and 1978 tentative final monograph rulemaking) that "non-habit-forming" was misleading as to *all* products with approved daily doses of at least 50 milligrams of diphenhydramine, one would have expected the FDA to have similarly approved the use of this phrase when it promulgated its final monograph applicable to Defendant's Products just a few years later. The fact that it did not is telling. *See* 54 Fed. Reg. at 6,814.

Finally, Defendant's assertion that two more recent and random statements purportedly attributed to the FDA, outside the formal rulemaking process, demonstrate that the agency "considered both the possibility that diphenhydramine could be habit-forming and whether manufacturers could market the medicine as 'non-habit forming'" is unpersuasive. ECF 52 at 24-25. Defendant provides zero authority supporting that an online "consumer information booklet" or casual comment by an FDA spokesperson, to a media outlet, could undermine or override the agency's formal rulemaking process. The fact remains that, during that official process, the FDA explicitly determined that marketing products like the Defendant's as "non-habit forming" would be "misleading, undesirable, and probably false." 40 Fed. Reg. at 57,297, 57,303 (proposed monograph); 43 Fed. Reg. at 25,578 (tentative final monograph).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant's argument—that preemption applies simply because the FDA considered the appropriateness of a challenged phrase—lacks legal support, as the Court has implicitly already determined. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (state claims over cosmetics labeling not preempted where FDA "never issued regulations regarding the use of [the challenged term] on cosmetics labels"); *Wyeth v. Levine*, 555 U.S. 555, 587-88 (2009) (Thomas, J., concurring) ("Congressional and agency musings . . . do not satisfy the Article I, § 7, requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause"); *id.* at 602 (Thomas, J., concurring) ("[P]re-emptive effect is given only to policies actually authorized and effectuated through statutory text"); *Stephens v. Target Corp.*, 2023 WL 6218060, at *5-6 (D. Minn. Sept. 25, 2023) (rejecting preemption where FDA considered "non-drowsy" for antihistamines but omitted the term from the final monograph, as preemption cannot rest on "agency action that lacks any force of law" under the Supremacy Clause).

The cases on which Defendant relies also do not alter this analysis. For instance, in *Seale v. GSK Consumer Health, Inc.*, the court determined that the FDA had "already regulate[d]" the child-focused cough and cold medication labeling that the plaintiff sought to challenge entirely. 2024 WL 1040854, at *6 (C.D. Cal. Feb. 27, 2024). Similarly, Defendant mischaracterizes *Baker v. Nestle S.A.* by claiming the court granted preemption despite FDA regulations not addressing the specific representation at issue (ECF 52 at 22). In reality, the court found that the FDA's regulation of the term "purified water" explicitly covered the challenged representations that bottled water was "pure" or "purified." 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019). This analysis aligns with *Morgan v. Albertsons Companies, Inc.*, where the Court concluded that the FDA's regulation of "immediate release" also encompassed the similar phrase "rapid release" for generic acetaminophen products, preempting claims that did not extend beyond FDA-approved designations. 2023 WL 3607275, at *6 (N.D. Cal. Mar. 13, 2023). Here, the FDA has not regulated the phrase "non-habit-forming," or anything similar to it, as applied to Defendant's Products. *See* ECF 45 at 8.

Plaintiffs' claims also do not seek to compel Defendant to include "additional or different information on a federally approved label," as the labels featuring the "Non-Habit Forming" claim have not received federal approval. *See Morgan*, *supra* at *5; *see also* 21 C.F.R. § 338.50 (reflecting

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

absence of authorization to include phrase "non-habit forming" or similar claims on over-the-counter sleep aid labels). Rather, the FDA in declining to expressly authorize or prohibit "non-habit-forming" claims effectively chose to allow the FDCA's prohibition on misleading labels under 21 U.S.C. Section 352(a) to govern. Where, as here, the only regulation that governs the challenged claim falls under the FDCA ban on misleading labels application, the state laws banning misleading labeling claims are consistent with the FDCA—and preemption is inappropriate. *See* 21 U.S.C. § 352(a) (defining a "misbranded" drug as one whose "labeling is false or misleading in any particular manner"); *see also Morgan*, *supra* at *7-8 (citation omitted). Finally, because, as the Court previously recognized (ECF 45 at 8), Plaintiffs' claims "go beyond the FDA-approved labeling and advertising" of Defendant's Products, challenging statements that "are at variance with the FDA-approved label," they are not subject to preemption. *See id.* at *5 (citation omitted); *see also Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009) ("[T]he FDA has traditionally regarded state law as an additional layer of consumer protection that complements FDA regulation").

Nothing Defendant raises in its motion undermines the Court's  prior rejection of Defendant's preemption challenge. To the extent the Court even entertains the recycled arguments, the same result should follow here.

### C.     Plaintiffs Adequately Pled that Defendant Committed Breach of Warranty

Defendant's argument that Plaintiffs have not adequately pled breach of warranty fails because (1) Plaintiffs have now cured the issues the Court previously identified by limiting their warranty allegations to those under California law and bolstering the factual showing of the Products' habit-forming qualities, and (2) Defendant's only argument as to this claim relies on a fundamental misreading of the SAC.

Plaintiffs have refined their breach of warranty claims to focus exclusively on breach of warranty under California law. *See* ECF 47 ¶¶ 122-130. They have also strengthened their allegations, asserting that Defendant breached its express warranty and misled Plaintiffs by falsely advertising its Products as "Non-Habit Forming," contrary to scientific evidence. Plaintiffs bolster their well-pled allegations that the Products are habit-forming, despite Defendant's express warranty to the contrary, through citations to peer-reviewed studies and the declaration of Dr. Antonia

Nemanich. For example, the 2008 study *Cocaine-Like Neurochemical Effects of Antihistaminic Medications* (106 J. Neurochem 147 (Jul. 1, 2008) (ECF 47 ¶ 15)) shows that diphenhydramine triggers a cocaine-like response in rat brains; the 2022 Richardson study *Tolerance to Daytime Sedative Effects of H1 Antihistamines* (22 J. Clin. Pharm. 511-515 (Oct. 2022) (ECF 47 ¶ 32, n. 42)) confirms that diphenhydramine is habit-forming with regular use; and the 1998 Dinndorf-McCabe study *Risk of Abuse of Diphenhydramine in Children and Adolescents with Chronic Illnesses* (133 J. Pediatrics 293-295 (Aug. 1998) (ECF 47 ¶ 34, n. 44)) demonstrates that users quickly build tolerance, leading to increased intake and difficulty quitting. Dr. Nemanich's declaration further supports these findings, confirming that diphenhydramine is habit-forming with regular use. ECF 47-5 ¶¶ 7-12.

Defendant's two-paragraph argument challenging the adequacy of Plaintiffs' breach of warranty claim appears to rest entirely on the assertion that Plaintiffs are entitled only to "the diminution in value between the [Products] as warranted and the [Products] as sold," rather than the full purchase price. ECF 52 at 25-26 (citing *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 966 (N.D. Cal. 2018)). However, far from seeking an exclusive remedy of damages as measured by the full purchase amount, Plaintiffs through this cause of action seek "a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains . . . as well as injunctive relief." ECF 47 ¶¶ 6, 127, 138(d). Furthermore, Plaintiffs' reference in paragraph 127 of the SAC to having suffered "economic losses" that include "the amounts paid for the Products" (ECF 47 ¶ 127) in no way connotes that Plaintiffs demand that amount *and only that amount*, as Defendant alleges, as its sole "relief under their warranty theory" (ECF 52 at 26).

There is a difference between a reference to incurred losses and a demand for recompense. Additionally, beyond the plain language of paragraph 127, Plaintiffs reference their payment of a "premium" for the Products several times throughout the second amended complaint. *See* ECF 47 ¶¶ 3, 4, 6, 45, 81, 89, 97. Plaintiffs specifically note at paragraph 6 that through this action they seek generally "a monetary recovery of the price premium Plaintiffs and consumers overpaid for [Defendant's] Products." Plaintiffs also reiterate this potential measure of damages alongside a reference to the alternative full-price measure at paragraph 45, and expressly incorporated each of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

these assertions into its breach of warranty claim. *Id.* ¶ 122. Defendant's claim that Plaintiffs have failed to adequately plead breach of express warranty by seeking only a remedy of damages in the amount of the Products' full purchase price amount without alleging that Defendant's misrepresentation makes the Products completely worthless fails because it ignores the plain language of Plaintiffs' SAC.

**D.    Plaintiffs Adequately Pled their Unjust Enrichment Cause of Action**

The Court should deny Defendant's motion to dismiss Plaintiffs' unjust enrichment claim, as it remains viable alongside Plaintiffs' other claims and is not precluded by the breach of express warranty claim due to the lack of an express agreement and vertical privity. Furthermore, as discussed above, the Court should deny Defendant's motion as it pertains to Counts One through Four. With these claims intact, Defendant's challenge to Plaintiffs' unjust enrichment claim on the grounds of "absence of predicates" fails by default. ECF 52 at 27; *see Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (noting that an unjust enrichment claim depends on the viability of the plaintiff's other claims). As detailed above, Plaintiffs have resolved all issues previously raised by the Court in its August 19, 2024 Order (ECF 45) by strengthening their allegations and refining their claims in the SAC. *See* ECF 47, *passim*.

The Court should also reject Defendant's argument that Plaintiffs are barred from pursuing their unjust enrichment claim due to concurrently alleging an express contract through their breach of express warranty claim. *See* ECF 52 at 27. Federal courts permit parties to plead "two or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552, at *3 (E.D. Cal. June 12, 2015). Additionally, parties may "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

Plaintiffs acknowledge that, as this Court has noted, the right to alternative pleading under FRCP 8 "does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to [maintain] an unjust enrichment claim while also alleging an express contract." *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018) (citing *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Cal. 2004)). Plaintiffs also recognize that "a quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights," and that an express warranty may qualify as such an agreement. *Id*. (citing *Gerstle v. Am. Honda Motor Co.*, Case No. 16-cv-04384-JST, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017) (internal quotation marks, alteration, and citation omitted)).

However, Defendant's reliance on *Deras*, *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2016), and *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) is misplaced because the plaintiffs in each of these cases were in privity with the defendants. In *Deras*, the plaintiff and the proposed class allegedly held written limited warranties provided by defendant Volkswagen covering their leased or purchased automobiles. 2018 WL 2267448, at *3. In *Strumlauf*, the plaintiffs directly purchased the product—coffee lattes—from defendant Starbucks. 192 F. Supp. 3d at 1028. And at least some of the plaintiffs in *Stewart* reportedly purchased the products in question there—allegedly slack-filled packaged pancake and waffle mixes—directly from the defendant manufacturer through its online store. 537 F. Supp. 3d at 1133, 1137.

In contrast, Plaintiffs allege that they purchased the Products from third-party retailers. *See* ECF 47 ¶¶ at 9-10 (Plaintiff Sneed purchased the Product at a CVS store in Berkeley, CA, and Plaintiff Cannon purchased the Product at a Walmart store in Orangevale, CA) *This distinction is critical*: While vertical contractual privity between parties is usually required to establish the existence of an express warranty in California, and such privity does not exist between a consumer and a manufacturer when the consumer purchases the manufacturer's good from a third-party retailer, the California Supreme Court has recognized an exception to the privity requirement where "the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 530 F.3d 852, 858 (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 268 P.2d 1041, 1048-49 (Cal. 1954)). Applying these tenets, a federal court in this Circuit recently held that a consumer plaintiff who purchased packaged ramen from third-party grocery and convenience stores was not in privity with the ramen manufacturer defendants—and thus her still-viable express warranty claim did *not* "allege[] the existence of an express agreement."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Case No. 4:23-cv-05443-JST                    -20-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

*Sue Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-cv-10485-SVW-MRW, 2024 WL 4467603, at *1, 4, n.3 (C.D. Cal. Aug. 13, 2024). Since no express agreement existed between the parties due to their lack of privity, the court held that the plaintiff's quasi-contractual unjust enrichment claim was "not barred by her express warranty claim" and denied the defendants' motion to dismiss the claim. *Id.* at *11-12.

This is precisely the scenario here. Plaintiffs have pled Counts Four and Five in the alternative. *See* ECF 47 ¶¶ 122-137; *see also* ECF 28 at 32 (Plaintiffs reiterating their right to continue "to plead [their] claims in the alternative"). Mirroring the facts in *Shin*, the parties do not share vertical privity because Plaintiffs purchased the Products from local stores rather than from Defendant directly. That means, like *Shin,* Plaintiffs' express warranty claim does not depend on the existence of an express *agreement* between the parties under California law. Plaintiffs may therefore pursue unjust enrichment concurrently with their warranty claim.

## V.   CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's motion or, alternatively, grant Plaintiffs leave to amend any identified pleading defects. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) (complaint should not be dismissed without leave to amend unless amendment would be futile); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (courts within Ninth Circuit required to apply policy favoring amendment with "extreme liberality").

Dated: November 22, 2024

**CLARKSON LAW FIRM, P.C.**

By: */s/ Benjamin J. Fuchs*
     Ryan J. Clarkson
     Bahar Sodaify
     Benjamin J. Fuchs
     Samuel M. Gagnon

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265