Cortlin H. Lannin (SBN 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: clannin@cov.com

Andrew Soukup (*pro hac vice*)
Sameer Aggarwal (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
         saggarwal@cov.com

*Attorneys for Defendant*
*The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| STEPHEN SNEED, individually and on behalf of all others similarly situated, | Civil Case No. 4:23-cv-05443-JST |
| Plaintiffs, | **DEFENDANT THE PROCTER & GAMBLE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUBSTITUTION AND TO AMEND** |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | Judge: Hon. Jon S. Tigar |
| Defendant. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................1

II.  BACKGROUND ...............................................................................................2

III. ARGUMENT .....................................................................................................4

     A.   Plaintiff's Counsel Was Not Diligent In Pursuing Their Proposed Amendment. ...............5

     B.   Adding New Named Plaintiffs Would Prejudice P&G........................8

IV.  CONCLUSION...................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
  2014 WL 4352169 (S.D. Cal. Sep. 2, 2014) ................................................................. 8

*In re ARRIS Cable Modem Consumer Litig.*,
  2019 WL 4242666 (N.D. Cal. Sept. 6, 2019) ............................................................... 4

*F.G. v. Coopersurgical, Inc.*,
  2024 WL 2274448 (N.D. Cal. May 20, 2024) (Tigar, J.) ............................................. 7

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ....................................................................................................... 7

*Hitt v. Ariz. Beverage Co.*,
  2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) ....................................................... 4, 8, 9

*Imran v. Vital Pharms., Inc.*,
  2019 WL 12340204 (N.D. Cal. Oct. 17, 2019) (Tigar, J.) ........................................ 5, 7

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ..................................................................................... 4, 6

*Osakan v. Apple Am. Grp.*,
  2010 WL 1838701 (N.D. Cal. May 5, 2010) ............................................................. 6, 8

*Plascencia v. Lending 1st Mortg.*,
  2012 WL 253319 (N.D. Cal. Jan. 26, 2012) .............................................................. 4, 7

*Pons v. Walter Kiddle Portable Equip. Inc.*,
  2024 WL 2852196 (N.D. Cal. June 5, 2024) ................................................................ 5

*Salazar v. Victoria's Secret & Co.*,
  2025 WL 1771435 (N.D. Cal. June 26, 2025) .............................................................. 5

*Skilstaf v. CVS Caremark Corp.*,
  2010 WL 199717 (N.D. Cal. Jan 13, 2010) .................................................................. 4

*Velazquez v. GMAC Mortg. Corp.*,
  2009 WL 2959838 (C.D. Cal. Sep. 10, 2009) ........................................................... 8, 9

*Wilson v. Frito-Lay N. Am., Inc.*,
  2017 WL 3478776 (N.D. Cal. Aug. 14, 2017) (Tigar, J.) .......................................... 4, 8, 9

*In re ZF-TRW Airbag*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ......................................................................... 4

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................ 9

Fed. R. Civ. P. 16 ............................................................................................................ 4, 5

1

## I.    INTRODUCTION

2      Plaintiff's eleventh-hour request to restart this case from scratch by adding new plaintiffs who

3   intend to assert new claims against P&G should be denied.  Contrary to the suggestion in Plaintiff's

4   motion, this is not an instance where this Court is being asked to "substitute" one class representative for

5   another.  No class has been certified, and Plaintiff has not been appointed a class representative.  In fact,

6   Plaintiff and his counsel have not produced a shred of evidence to support his claims:  Plaintiff produced

7   just one document in this case, and Plaintiff provided no evidence he even purchased any of the products

8   at issue (much less the price he paid to purchase those products) or that there is anything false about the

9   "non-habit forming" representation on the product package.

10      Under these circumstances, Plaintiff has not shown "good cause" for why leave to add new

11   plaintiffs should be granted months after the deadline to do so has passed.  As early as June 2025,

12   Plaintiff's counsel was aware that Plaintiff was the only potential class representative, and by their own

13   current admission, they were "concerned" at that time about what may happen to the case if Plaintiff

14   could no longer participate.  Yet Plaintiff's counsel did nothing to address those "concern[s]."  They

15   litigated this case throughout the fact discovery period with only Plaintiff available to represent the

16   putative class, and they have demanded many iterations of discovery from P&G—resulting in the

17   production of thousands of pages of documents—while producing nothing to support Plaintiff's claims.

18   Only after P&G pressed Plaintiff to appear for a deposition did counsel commence an "outreach

19   campaign" to solicit potential class members who may be able to serve as named plaintiffs.

20      Plaintiff's counsel's conduct does not come close to showing diligence or otherwise providing

21   the good cause that is required to support their belated amendment.  Counsel could have easily pursued

22   the addition of new plaintiffs at the appropriate time under the case schedule—before P&G expended

23   significant resources in discovery litigating these claims against Plaintiff.  Nor have the new proposed

24   plaintiffs demonstrated diligence in pursuing their claims against P&G, as one plaintiff claims she has

25   been using ZzzQuil for 10 years.  Resetting this case now would also impose significant prejudice on

26   P&G by mooting significant work that has already been completed.

27      This Court should not assume that if it denies Plaintiff's motion, a new lawsuit will be filed.

28   Plaintiff's counsel previously came forward with a different proposed plaintiff earlier this year, but

never sought to add that individual to this case, and that individual has not been heard from since. Since Plaintiff is not interested in litigating his claims and has not shown good cause to add new parties, the proper approach is to deny Plaintiff's motion, which will lead to Plaintiff dismissing his claims and bring this over-two-year-old case to an end.

## II.    BACKGROUND

This case, which has been pending for more than two years, has had three plaintiffs. The original complaint was filed by Stephen Sneed and Nickolas Cannon, Dkt. 1, who were joined by Moussa Kouyate in the First Amended Complaint. Dkt. 23. After the Court dismissed Mr. Kouyate's claims, Dkt. 45, Mr. Sneed and Mr. Cannon filed the Second Amended Complaint, Dkt. 47. On June 5, 2025, the day before the deadline to add parties or amend the pleadings, Plaintiff's counsel notified P&G that Mr. Cannon "no longer wishes to participate in this matter." Lannin Decl. ¶ 2. The next day, Plaintiff's counsel clarified that Mr. Cannon was withdrawing as a plaintiff because "he does not have time to participate," and circulated a proposed Third Amended Complaint that continued to include Mr. Sneed, dropped Mr. Cannon, and added a new named plaintiff, Eric Collins. *Id.* ¶ 4. After P&G informed Plaintiff's counsel that it did not believe there was good cause for the amendment and would not consent to it, Plaintiff dropped the matter and never sought amendment, including to add Mr. Collins (who has never been heard from again). *Id.* ¶ 5. Mr. Cannon ultimately dismissed his claims on July 7, 2025, leaving Mr. Sneed as the sole named plaintiff in this case and the only individual who has ever responded to P&G's discovery. Dkt. 74.

Plaintiff's discovery responses have been threadbare. Plaintiff has not produced a single piece of evidence to substantiate his claim that the "non-habit forming" representation on ZzzQuil is false or misleading. Lannin Decl. ¶ 8. He has produced only a single document: the consulting agreement between Plaintiff's counsel and their purported expert, Dr. Antonia Nemanich. *Id.* He has not produced, for example, a single document establishing that he ever purchased ZzzQuil—not a single receipt or online order history—much less any documents to support his allegations that he relied on the "not-habit forming" representation and developed a habit of using ZzzQuil. *Id.* By contrast, P&G has fully participated in discovery and produced thousands of pages of documents in response to Plaintiff's requests. *Id.* ¶ 6.

If Plaintiff ever had any interest in litigating his claims, it disappeared when P&G began pressing Plaintiff to appear for a deposition—a deposition that P&G rescheduled 3 times. On August 14, 2025, Plaintiff's counsel indicated Plaintiff could be available for deposition on September 29, and on August 25, P&G issued a deposition notice for that day. *Id.* ¶ 9. That same day, Plaintiff's counsel sought to postpone the deposition due to a "scheduling conflict." *Id.* ¶ 10. To accommodate that conflict, P&G agreed to move Plaintiff's deposition to October 14. *Id.*

On October 8, less than a week before Plaintiff's October 14 deposition, Plaintiff's counsel informed P&G that Plaintiff "sustained an injury that requires surgery" and that they would once again need to postpone the deposition. *Id.* ¶ 11. P&G agreed to move the date but observed that, because P&G had "requested Mr. Sneed's deposition well before Plaintiff requested a deposition of P&G, and given that Mr. Sneed has moved his deposition once already after we agreed on dates, P&G does not intend to present its 30(b)(6) witnesses until after the deposition of Mr. Sneed." *Id.* Plaintiff's counsel never expressed any objection to P&G's position on the sequencing of depositions. *Id.*

On October 22, P&G wrote to observe that two weeks had passed but Plaintiff's counsel still had not offered updated dates for Plaintiff's deposition, and that in light of the upcoming class certification deadline on December 8, P&G was serving a deposition notice for November 19. *Id.* ¶ 12. On November 10, Plaintiff's counsel informed P&G that Plaintiff would no longer continue as a plaintiff and sought P&G's consent to a stipulation that would add new plaintiffs. *Id.* ¶¶ 13–14. On November 13, P&G informed Plaintiff's counsel it would not consent to such a stipulation and that the proper course was for Plaintiff to dismiss his claims. *Id.* ¶ 15.

On November 17, Plaintiff's counsel filed the instant motion and attached their proposed Third Amended Complaint, which includes three brand new proposed named plaintiffs, none of whom have previously participated in the case. Dkt. 89, 89-2. These individuals did not come to Plaintiff's counsel of their own volition. Rather, they were recruited and responded to counsel's "outreach campaigns," about which Plaintiff's counsel has provided no details. Dkt. 89-1, ¶¶ 8–9. The three new proposed plaintiffs bring materially different allegations than the three plaintiffs that came before and have now fallen away. For example, whereas Plaintiff conceded that he stopped using the product, *see* Second Am. Compl. ¶ 9, proposed Plaintiffs Wilt and Patankar allege that they "continue to *use* the Product due

to its habit-forming nature." Dkt. 89-2, ¶¶ 9(h), 10(h) (emphasis added); *see also* Dkt. 89-8, ¶¶ 9(h), 10(h). Meanwhile, proposed Plaintiff Won affirmatively alleges that she "stopped purchasing [ZzzQuil] after about a year." Dkt. 89-2, ¶ 11(b). Her allegations stand in contrast to Plaintiff, who alleges that he "continues to see" ZzzQuil available for purchase and "desires" to purchase it again. *Id.* ¶ 9(h).

## III.    ARGUMENT

Because the deadline to add parties or amend pleadings passed almost six months ago, on June 6, Plaintiff must show "good cause" to amend his complaint under Rule 16(b)(4). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). The good cause inquiry "primarily considers the diligence of the party seeking the amendment" and focuses on "the moving party's reasons for seeking modification." *Wilson v. Frito-Lay N. Am., Inc.*, 2017 WL 3478776, at *2 (N.D. Cal. Aug. 14, 2017) (Tigar, J.). "It is the moving party's burden to show that it acted diligently to comply with the Court's deadline." *In re ARRIS Cable Modem Consumer Litig.*, 2019 WL 4242666, at *3 (N.D. Cal. Sept. 6, 2019). To meet that burden, the moving party "must . . . show that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary." *Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *5 (N.D. Cal. Jan. 26, 2012). Prejudice to the non-moving party also supplies "additional reasons to deny a motion" under Rule 16, *id.*, but prejudice need not be shown for a court to conclude that good cause is lacking, *see Johnson*, 975 F.2d at 609 ("If [the moving] party was not diligent, the inquiry should end.").

Plaintiff portrays his motion as a request to substitute class representatives, but substitution of class representatives is "[o]rdinarily . . . permitted only after a class has already been certified." *Skilstaf v. CVS Caremark Corp.*, 2010 WL 199717, at *6 (N.D. Cal. Jan 13, 2010); *In re ZF-TRW Airbag*, 601 F. Supp. 3d 625, 761 (C.D. Cal. 2022) (same). Indeed "the paramount consideration" when "deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims are voluntarily dismissed" is "whether the putative class has been certified." *Hitt v. Ariz. Beverage Co.*, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (collecting cases) (denying motion to substitute in a new plaintiff for a withdrawing named plaintiff where the class had not yet been certified).

1
2
3
4
5
6

Contrary to Plaintiff's argument, there is no "consensus" among courts permitting the swapping of class representations prior to class certification. Indeed, two of the cases cited by Plaintiff—*Pons v. Walter Kiddle Portable Equip. Inc.*, 2024 WL 2852196 (N.D. Cal. June 5, 2024), and *Salazar v. Victoria's Secret & Co.*, 2025 WL 1771435 (N.D. Cal. June 26, 2025)—are inapposite, as they concern motions to amend that were filed *before* there was an operative deadline to do so and thus did not implicate Rule 16's "good cause" standard, whereas here the deadline to amend has passed months ago.

7
8

There is no reason to depart from this straightforward principle here, particularly where Plaintiff has failed to show good cause for the proposed amendment.

9

### A.     Plaintiff's Counsel Was Not Diligent In Pursuing Their Proposed Amendment.

10
11
12
13
14

Plaintiff's counsel offers no good explanation for their lack of diligence, and indeed unreasonable delay, in seeking this Court's permission to amend the complaint to add new named plaintiffs. That is reason enough to find a lack of good cause because "[e]ven where adding a class representative is necessary to salvage the class's claims, plaintiffs still must show diligence." *Imran v. Vital Pharms., Inc.*, 2019 WL 12340204, at *3 (N.D. Cal. Oct. 17, 2019) (Tigar, J.).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's counsel was aware as early as June 2025 of the risk that their case would end up without a named plaintiff. By their own admission, following the dismissal of Mr. Kouyate's claim and Mr. Cannon's announcement in June that he did not have time to participate in this case, Plaintiff's counsel were "concerned about what might happen if the one remaining named Plaintiff, Mr. Sneed, unexpectedly became unable to continue serving as a class representative." Sodaify Decl. ¶ 4 (Dkt. 89-1). Plaintiff's counsel expressed no such "concern" to P&G at the time, and the first time P&G learned about this purported concern was when Plaintiff decided to withdraw from this case in November 2025. But even if Plaintiff's counsel had this concern back when Mr. Cannon determined to withdraw from the case in June, Plaintiff's counsel could have filed a motion to amend the deadline for adding parties. They did not. Instead, they sought a stipulation from P&G on the day before the deadline to amend the pleadings, seeking to drop Mr. Cannon and add a new plaintiff. Lannin Decl. ¶ 2. Notably, the proposed plaintiff that Plaintiff's counsel proffered in June is not one of the new plaintiffs seeking to join this case now. *Id.* ¶ 5. P&G declined Plaintiff's last-minute stipulation and Plaintiff then dropped the matter altogether. *Id.* Plaintiff has no explanation why his counsel should be permitted to add new

parties now when they apparently contemplated the possibility of doing so back in June and did not do so.

Notwithstanding Plaintiff's counsel's professed "concern" about proceeding with only one named plaintiff, they did exactly that—and Plaintiff's subsequent participation in discovery was anemic. While P&G has produced thousands of pages of documents, Plaintiff has produced exactly one document in discovery: an agreement between his counsel and their purported expert. Lannin Decl. ¶ 8. Plaintiff apparently does not have a single document evidencing his allegation that he "[d]eveloped [a] habit from [u]sing the [p]roduct," and "rel[ied] on it to fall asleep." Second Am. Compl. ¶ 9(d). Nor did he produce any of the documents that are entirely typical of cases like this, including any documents establishing that he actually *bought* any of the ZzzQuil products he is challenging, much less that he relied upon the "non-habit forming" representation in doing so. Lannin Decl. ¶ 8. P&G also made the simple request that Plaintiff disclose "[d]ocuments reflecting any disclosures, statements, representations, or other information concerning the Products that [Plaintiff] contend[s] are false or misleading." *Id.* ¶ 7. These requests included, among other things, evidence that the products were in fact habit forming. *Id.* But Plaintiff has not produced any documents to attempt to substantiate his claim that the "non-habit forming" representation is false or misleading. *Id.* ¶ 8.

In the end, Plaintiff's counsel has apparently been concerned for months about proceeding with a single named plaintiff in this case. Those concerns should have been exacerbated by the history of named plaintiffs falling out of this case and Plaintiff's superficial participation in discovery. But far from moving "swift[ly]" as they claim (Mot. 6), for more than four months Plaintiff's counsel apparently did *nothing* to address those concerns. Indeed, they scrambled to find new plaintiffs only *after* Plaintiff notified them of his intent to withdraw, on the eve of the class certification. Sodaify Decl. ¶ 8. Only then did "identifying and vetting suitable replacements and engaging in outreach campaigns" become "a *top priority*." *Id.* (emphasis added). Far from demonstrating diligence, the record in this case speaks to Plaintiff's counsel carelessness in prosecuting it—and "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609; *Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *3 (N.D. Cal. May 5, 2010) (denying leave to add new plaintiffs because plaintiff "ha[d] known of [] potential standing issue" and "should promptly have taken

appropriate steps to resolve the dispute and/or seek to join or substitute himself with an appropriate class representative or representatives"); *Plascencia*, 2012 WL 253319, at *6 (denying amendment because plaintiffs "provide no explanation for why they failed to get in touch with [the potential plaintiff] at an earlier date to assess her willingness" to serve as a class representative).

Another troubling aspect of Plaintiff's counsel's lack of diligence is the "outreach campaign" to recruit potential plaintiffs that they launched in a hurry. P&G is concerned by counsel's ex parte communications with putative class members, in part because it is unclear what exactly counsel told these putative class members—and now proposed named plaintiffs—about the nature of this case, the status of this litigation, and their potential role in it. There is a reason courts often scrutinize and limit a party's communications with putative class members, particularly where the communications may "omit[] critical information or were otherwise misleading." *F.G. v. Coopersurgical, Inc.*, 2024 WL 2274448, at *3 (N.D. Cal. May 20, 2024) (Tigar, J.); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.12 (1981) (discussing risks of "[u]napproved communications to class members that misrepresent the status or effect of the pending action," which "have an obvious potential for confusion and/or adversely affecting the administration of justice"). P&G previously served a discovery request on Plaintiff seeking documents "relating to notices, solicitations, or advertisements from or by Your counsel seeking Your or other individuals' participation in this lawsuit," in response to which Plaintiff produced nothing. But if this Court does permit the substitution of new plaintiffs, P&G expects the production of responsive documents evidencing the "outreach campaign" through which they were recruited.

In addition to Plaintiff's counsel's lack of diligence, there is no evidence that any of the new proposed named plaintiffs—Shirley Won, Pamela Wilt, and Shirley Patankar—acted with diligence in pursing their claims against P&G. The proposed Third Amended Complaint (TAC) includes allegations that the proposed plaintiffs have each developed a habit of using ZzzQuil, Dkt. 89-2, ¶¶ 9–12, but has no details about when they developed their alleged habit or what they did about it. Indeed, there is no reason to think they did anything at all, since it was Plaintiff's counsel who found them and recruited them to be potential plaintiffs in this case. *See Imran*, 2019 WL 12340204, at *3 ("Plaintiffs do not state when [the proposed plaintiff] became aware of his claims or when [p]laintiffs' counsel became aware that [the proposed plaintiff] wished to also represent the putative class."). These proposed plaintiffs

1   cannot be said to have demonstrated diligence when they would not be here but-for Plaintiff's counsel

2   frenzied and undisclosed effort to find them.  Furthermore, Ms. Wilt alleges she has been using ZzzQuil

3   products since 2015, raising substantial questions about why she waited 10 years to bring claims against

4   P&G.

5           **B.      Adding New Named Plaintiffs Would Prejudice P&G.**

6           The prejudice P&G would suffer if Plaintiff is permitted to add new named plaintiffs on the eve

7   of class certification also militates against a finding of good cause.  To start, P&G has already expended

8   substantial resources to take discovery of Plaintiff.  This includes several meet-and-confers regarding

9   Plaintiff's discovery responses and correspondence memorializing the same.  P&G also invested time

10  and resources preparing to depose Plaintiff on each of the three dates that have been on the table.  All

11  this work is now for naught given Plaintiff's decision to withdraw.  As this Court has recognized, where

12  granting a motion to add parties would "moot[ ] the substantial amount of discovery that ha[s] already

13  been completed," this constitutes prejudice to the defendant.  *Wilson*, 2017 WL 3478776 at *4;

14  *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *4 (C.D. Cal. Sep. 10, 2009) (concluding that

15  "moot[ing] the substantial amount of discovery that ha[d] already been completed regarding the [named

16  plaintiffs]" would prejudice defendants); *Hitt*, 2009 WL 4261192, at *6 (denying motion to amend

17  complaint to substitute plaintiff, finding substitution would prejudice defendants by "effectively

18  moot[ing] the [p]laintiff-specific work [d]efendants have done," including taking discovery); *Osakan*,

19  2010 WL 1838701, at *5 ("The need to conduct additional discovery is considered prejudicial").[1]

20          In addition, permitting Plaintiff to file an amended complaint with three new named plaintiffs

21  would impose substantial burdens on P&G.  To start, P&G would be entitled to move to dismiss the

22  amended complaint—including raising statute of limitations defenses based on the new plaintiffs' delay

23  in bringing their claims—and would need to prepare a new answer if it survived such a challenge.  In

24

25  [1] Plaintiff errs in relying on *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169 (S.D. Cal. Sep. 2, 2014).
    There, the court first permitted the plaintiff to add a new claim before addressing substitution of a new
26  party.  *Id.* at *5.  Once the new claim had been added, further discovery was inevitable, and there was
    thus minimal prejudice to the defendant from the new party.  *See id.* at *11.  In contrast, allowing
27  amendment here would effectively restart this case without any countervailing considerations supporting
    the additional burdens that would be imposed on P&G.
28

1

2

3

4

5

6

7

addition, if the new complaint survived, P&G would have to launch discovery of each three new named plaintiffs.  This would include at a minimum the service of new document requests and interrogatories, as well as review of the responses and potential conferrals and motion practice to address deficiencies, followed by a deposition of each.  As this Court has recognized, "[e]ven if [plaintiffs] provides this discovery on an expedited basis … [P&G] would still have to undertake the substantial effort and expense of conducting this discovery and preparing and re-filing pre-trial motions that were specific" to the new plaintiffs.  *Wilson*, 2017 WL 3478776, at *4.  That would be prejudicial to P&G.

8

9

10

11

12

13

14

15

16

17

18

19

It makes no difference whether the proposed named plaintiffs could file a new lawsuit.  That is true in every case where a plaintiff seeks to join an existing lawsuit long after the deadline to add new parties has elapsed.  Yet courts still deny motions seeking such relief when, as here, good cause has not been shown.  *See, e.g.*, *Wilson*, 2017 WL 3478776, at *2; *Hitt*, 2009 WL 4261192, at *6; *Velazquez*, 2009 WL 2959838, at *4.  And it is far from certain that the new plaintiffs will in fact decide to file a new lawsuit, and they will have tough questions to answer about the Rule 11 basis for their claims when Plaintiff's counsel's current client has not produced a single document substantiating his allegations in response to P&G's discovery requests.  Indeed, Plaintiff's counsel previously claimed that another individual stood ready to assert claims against P&G, but nothing has been heard from that potential plaintiff since.  But even if the new plaintiffs intend to proceed with their case, the appropriate path to do so is by filing a new lawsuit—it is not by jamming their claims into a more-than-two-year-old case long after the deadline to add new parties has passed.

20

## IV.    CONCLUSION

21

22

Plaintiff's motion to amend should be denied and Plaintiff should be ordered to dismiss his claims with prejudice.

23

24

25

26

27

28

Dated: December 1, 2025

Respectfully submitted,

_/s/ Cortlin H. Lannin_

Cortlin H. Lannin (SBN 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: clannin@cov.com

Andrew Soukup (*pro hac vice*)
Sameer Aggarwal (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
            saggarwal@cov.com

*Attorneys for Defendant*
*The Procter & Gamble Company*